Argued 22 October, decided 16 November, 1903.

## BEACH *v.* STAMPER.

[74 Pac. 208.]

MECHANICS' LIEN—NOTICE ON SEVERAL BUILDINGS—JOINT CONTRACT.

A subcontractor furnishing materials for and performing labor on several buildings under an entire contract with a contractor who is bound by separate contracts for the construction of the separate buildings, is not entitled to a lien on all the buildings for the lump sum alleged to be due. Section 5640, B. & C. Comp., provides that every contractor shall be held to be the agent of the owner, but that does not give such agent power to make a broader contract than the one he himself has with the owner: *Willamette Mills Co.* v. *Shea*, 24 Or. 40, distinguished.

From Multnomah: MELVIN C. GEORGE, Judge.

This is a suit by F. E. Beach for the foreclosure of a mechanics' lien claimed by him upon four dwelling houses for materials furnished and used thereon. The defendant Stamper also claims a lien thereon for painting. Prescott, being the trustee for Charles Francis Adams, and the owner in that capacity of lots 5, 6, 11, 12, 13, and 14, in block 19, John Irving's First Addition to the City of Portland, entered into four contracts with the defendant King for the erection and completion of the dwelling houses upon said premises, there being a separate contract with a different consideration as to each, the houses to be separately located and constructed. King subsequently entered into a contract with Stamper whereby the latter, for the consideration of $615, agreed to furnish the materials and perform the necessary labor for painting, tinting, and staining the four houses according to the specifications of the architect, the value of the services as to each building being designated in the contract as house 1, $195; house 2, $120; house 3, $100; house 4, $200. Stamper purchased the materials for the work from plaintiff, and each filed a claim of lien for the labor and materials furnished and used in the buildings in pursuance of said contract and purchase. Each of said liens is claimed and filed upon all the buildings without segregation, and for a lump sum; Stamper's being for $122, and the plaintiff's for $240.61. The lien claimants having prevailed in the trial court, the defendants Prescott, Adams, and King appeal.

REVERSED.

For appellants there was a brief and an oral argument by *Mr. Otto J. Kraemer.*

For respondents there was a brief over the names of *Hogue & Wilbur* and *Andrew T. Lewis,* with an oral argument by *Mr. Lewis* and *Mr. Ralph W. Wilbur.*

MR. JUSTICE WOLVERTON, after stating the facts in the foregoing terms, delivered the opinion.

The vital question to be considered is whether the liens claimed by plaintiff and Stamper can legally attach to the four dwellings for the lump sum which each has alleged to be due him. In plaintiff's case the materials were furnished and used indiscriminately upon the buildings. It is so declared in his claim of lien, and it is practically conceded, that the amount or value thereof used upon each house is not susceptible of segregation. In the case of Stamper it is stated generally in his claim of lien that the labor was performed upon all the buildings, but the statement of the account or demand segregates the value performed on each as follows: Labor on house No. 1, $32; No. 2, $40; No. 3, $22; No. 4, $28. The evidence also tends to support the claim in this form. This court has decided, upon a very careful and clear discrimination of adjudicated cases, that one who, under a single contract for a specified lump sum or price, has performed labor or furnished materials which were used indiscriminately in. the construction of several houses, erected separately, but upon adjoining lots owned by the same person, is entitled to claim a lien upon all the houses and lots jointly, and to include them all in one notice: *Willamette Mills Co.* v. *Shea*, 24 Or. 40 (32 Pac. 759). The controlling feature which induced the decision was that the contract for construction was single, embracing all the buildings for a lump and inseparable sum or price, thus treating the property as a whole and inseverable. "In such case," it is said, "the contract relates to no particular building, but treats them as a whole, though they are, in point of fact, separate and distinct buildings." This is clearly manifest from the cases cited and discussed. *Wall* v. *Robinson*, 115 Mass. 429, is quoted from in part as follows: "In the case at bar

the petitioners have performed labor upon several build-
ings situated upon the same lot under an entire contract for
an entire price. We think such a case is within the purpose
of the statute and the intention of the legislature. The par-
ties by their contract have connected the several build-
ings, and treated them as one estate. * * We are of opin-
ion that when labor is performed or furnished under an
entire contract in the erection or repair of several build-
ings owned by the same person and situated upon the same
lot, a lien attaches upon the whole estate for the whole
value of the labor performed, if the other conditions of
the statute are fulfilled." So, from *Lax* v. *Peterson*, 42
Minn. 214, 219 (44 N. W. 3): "But how have the parties
to these building contracts treated the property, and not
how the owner intends to use it after the completion of
the houses, is the question. By contracting for the erec-
tion of these four houses under one entire contract, they
have connected the two city lots and the several buildings,
and treated the whole as one tract or estate." And again,
from *Phillips* v. *Gilbert*, 101 U. S. 721, 725: "The contract
was one, and related to the row as an entirety, and not to
the particular building separately. The whole row was
one building, within the meaning of the law, from having
been united by the parties on one contract, as one general
piece of work."

It is by reason of this condition that the courts have
been enabled to construe statutes relative to mechanics'
liens which generally employ the term "building," or its
equivalent in the singular, as embracing more than struc-
tures separately situated, simply because the parties have
treated the several structures by their contract as but a
single one. In such case the lien asserted may be claimed
and maintained upon the whole as if but one structure in
fact. The doctrine has been carried even further in *Fuller-
ton* v. *Leonard*, 3 S. Dak. 118 (52 N. W. 325), thus empha-

sizing the principle. There two owners, each of a separate lot, joined in a contract for the erection of several buildings. The subcontractor, who furnished materials to be used in the construction of all under an entire contract with the builder, was allowed his single lien against the whole of the several buildings and the two lots upon which they stood as a single structure and estate; the court saying, among other things: "A joint lien upon several buildings, situated upon different lots, owned by the same persons, could not be maintained where a separate contract had been entered into by the owner and contractor; for by the several contract the inference would be that a separate account should be kept with each building. Not so when the contract covered several buildings to be erected for a gross amount without regard to the cost of each. So, if two or more several owners of lots or parcels of land wish to jointly contract for the erection of several buildings, to be situated upon the several pieces, for a definite and specific sum in gross for all, without regard to the cost of either one, a joint lien may be asserted upon all for any balance due for the erection of such buildings." The contract is therefore the controlling feature that unites the several structures and enables the court to say that they are but one building within the spirit and reasonable intendment of the statute. Other cases are cited by the learned chief justice who wrote the opinion in the case alluded to, to the same purpose, but it is unnecessary to refer to them further here.

King, as we have seen, had separate contracts with Prescott, each bearing its own consideration for the construction of each of these buildings. He contracted with Stamper, however, for a single consideration, to perform the work of painting, staining, etc., upon all the buildings, and Stamper prefers a lien upon the whole, and we are to inquire whether Stamper is in a position to invoke the doc-

trine settled by the Willamette Mills Company Case. The original contractor, King, was not in a position to claim a single lien upon the whole for any default that might have been made by the builder in the payments stipulated for. This would seem to follow from the principle announced that the contract must form a basis for a lien on the whole, but it is supported by authority as well: 2 Jones, Liens (2 ed.), § 1314; *Landers* v. *Dexter*, 106 Mass. 531; *North & South Lum. Co.* v. *Hegwer*, 1 Kan. App. 623 (42 Pac. 388); *Fullerton* v. *Leonard*, 3 S. Dak. 118 (52 N. W. 325); *Currier* v. *Friedrick*, 22 Grant, Ch. (Can.) 243. But the exact question here involved—whether Stamper is entitled to the lien claimed by him—has been decided in *Knauft* v. *Miller*, 45 Minn. 61 (47 N. W. 313), wherein the court say: " The appellant (a subcontractor) is not entitled to a lien upon both lots for what was done under his entire contract," citing *Landers* v. *Dexter*, 106 Mass. 531, and continuing: " To charge the whole property with a lien to the extent of the whole contract price would, in effect, impose a lien upon each separate building and lot, not only for the labor and material expended upon it, but for that expended upon other buildings and lots. The distinct independent contracts made by the owner would not have justified the original contractor in claiming a lien upon either lot except for labor or material expended upon the particular lot sought to be so charged, and this subcontractor could secure no such general lien which the original contractor could not have done." To the same effect is *Larkins* v. *Blakeman*, 42 Conn. 292.

But it is insisted that these latter authorities should be distinguished because of the language of our statute, whereby it is provided that every contractor, subcontractor, architect, or builder, or other person having charge of the construction, alteration, or repair, in whole or in part, of any building, shall be held to be the agent of the owner

(B. & C. Comp. § 5640), and that for the purposes of this case King was the agent of the owner in contracting with Stamper, and therefore that the owner is as much bound as if Stamper had contracted with him directly, thus enabling Stamper to claim a single lien upon all the houses. This statute has practically received construction by Mr. Chief Justice Moore in *Fitch* v. *Howitt*, 32 Or. 396, 408 (52 Pac. 192), wherein he says : " The contractor, being in the nature of a special agent of the owner, with limited power, has authority to bind the property benefited for the payment of the reasonable value of such material only as is ordinarily sufficient properly to construct the building in accordance with the plans and specifications thereof, or in pursuance of the agreement entered into between the owner and contractor." This construction must necessarily be sound. All authority to bind the owner on account of the building or buildings to be constructed must emanate from the original contract, which becomes the fundamental law for the government of all subcontracts, as they must be let under it and by virtue of the contractor's authority obtained through it. If it were otherwise, the contractor could, by the semblance of a construction contract, bind the owner to all sorts of exorbitant conditions, to his manifest injury ; and the statute ought not to be construed so as to work any such evil. Applying the principle referred to, it is impossible that Stamper could have obtained a right through his contract with King superior to that which King obtained through his contracts with the owner—that is, the right to file a single lien against all the buildings—when King had no such authority. Stamper's case cannot be distinguished, therefore, from *Knauft* v. *Miller*, 45 Minn. 61 (47 N. W. 313), and *Larkins* v. *Blakeman*, 42 Conn. 292, and we are impelled to the conclusion that he is not entitled to a lien according to the manner in which he has filed his claim. Nor

does Beach stand in any better light, as his contract was with Stamper, and his claim of lien is also without validity.

Other questions were presented, but this one disposes of the case, making it unnecessary to discuss them. The decree of the circuit court will therefore be reversed, and one here entered dismissing the complaint and cross-bill of Stamper.                         REVERSED.