### SMITH v. WILCOX.

### Smith v. Turple.

[74 Pac. 708, 75 Pac. 710.]

Mechanic's Liens—Right of Subcontractor.

1. A subcontractor on a building is a "contractor" within the meaning of that word as used in Section 5640, B. & C. Comp., and is also included in the class of persons designated by that statute as "any other person performing labor upon or furnishing material to be used in" any building, and is therefore one who may avail himself of the benefits of the mechanic's lien law.

Scope of Agency of Original Contractor.

2. Under Section 5640, B. & C. Comp., which makes "every contractor, builder, or other person having charge of the construction, in whole or in part, of any building * * the agent of the owner," the contractor for the erection of a building is the owner's agent for the employment of a subcontractor, who is thus in privity with the owner.

Evidence of Terms of Contract—Separate Subcontracts.

3. The evidence establishes that the contractor for the erection of the buildings made a separate contract with a subcontractor for each building, and therefore the latter is entitled to a claim against each for the amount unpaid on it: *Beach* v. *Stamper*, 44 Or. 4, distinguished.

Application of Payments.

4. A creditor has a right to apply as he may prefer payments made by his debtor, and in the absence of unfairness, the credit will remain as placed. For instance, a contractor under separate engagements to erect buildings for different owners, having sublet both contracts separately to one person and paid on both without distinction or direction, the subcontractor may make any fair application of the credits, and the property owner cannot complain, the original contractor being his agent under the statute.

LIMIT OF AGENCY OF CONTRACTOR—RIGHT OF SUBCONTRACTOR.

5. In determining the right to a lien under Section 5640, B. & C. Comp., the question of the subcontractor's profit or loss is immaterial, the right being based on the agency created by the statute, limited by the scope and terms of the original contract.

From Multnomah: ARTHUR L. FRAZER, Judge.

These are separate lien suits by H. N. Smith against Nathan Wilcox and others, and against Isaac Turple and others. · In 1902, G. H. Dammeier Company, a private corporation, entered into a contract with Nathan Wilcox, whereby, for the consideration of $650, it agreed to sell to Wilcox the east half of lots 5 and 8, in block 3, Doscher's Second Addition to Portland, and for the further consideration of $1,510 to construct thereon for him an eight-room house, according to certain plans and specifications then submitted. At the same time the company entered into a like contract with Turple for the sale of the west half of the same lots to him for the consideration of $700, with an agreement, for the additional consideration of $1,510, to construct an eight-room house thereon for him also. Dammeier Company subcontracted with plaintiff for the ·construction of both houses, and plaintiff, having fully performed, and claiming a balance due him of $145 on each building, filed upon each a claim of lien therefor. These suits were separately instituted to foreclose· such liens, but consolidated at the trial. Plaintiff having been granted the relief sought, the defendants appeal.

AFFIRMED.

For appellants there was a brief over the names of *John T. Whalley* and *Pipes & Tifft*, with an oral argument by *Mr. Martin L. Pipes.*

For respondent there was a brief and an oral argument by *Mr. Walter S. Hufford.*

MR. JUSTICE WOLVERTON, after stating the facts in the foregoing terms, delivered the opinion of the court.

1. Appellants' counsel first insist that a subcontractor is not within the purview of the mechanic's lien statute, and hence he cannot claim its benefits. The question is wholly one of construction. "Every mechanic, artisan, machinist, builder, contractor, lumber merchant, laborer, teamster, drayman, and other person performing labor upon or furnishing material, or transporting or hauling any material of any kind, to be used in the construction, alteration, or repair, either in whole or in part, of any building, wharf, * * or any structure or superstructure, shall have a lien upon the same for the work or labor done or transportation or material furnished at the instance of the owner of the building or other improvement or his agent; and every contractor, subcontractor, architect, builder, or other person having charge of the construction, alteration, or repair, in whole or in any part, of any building or other improvement as aforesaid, shall be held to be the agent of the owner for the purposes of this act": B. & C. Comp. § 5640. "A subcontractor is one who has entered into a contract, express or implied, for the performance of an act with the person who has already contracted for its performance": Phillips, Mech. Liens, (3 ed.) § 44. A subcontract is defined to be "a contract by one who has contracted for the performance of labor or service with a third party for the whole or part performance of that labor or service": Bouvier, Law. Dict. The term "subcontractor" therefore is not inappropriate to designate one who has contracted with the principal contractor to perform the whole as well as a part of the service which the latter has undertaken to perform. The statute was certainly intended to be, and is by its terms, very comprehensive in its scope and bearing, as it concerns persons performing labor and furnishing materials, one or both, in the construction or repair of the structures or superstructures designated. A subcontractor is not

specially designated by name, as are others in the statute, as entitled to its benefits; but, if the term "contractor" is to be treated as used in its generic sense, he certainly falls within the category. He is assuredly a person who performs labor or furnishes materials, one or both, as the case may be; and in the case at bar he has not only done both, but he has erected and completed the entire structure. And would it not seem strange that a contractor, who did the same work, and workmen and materialmen who are employed and furnish materials at his instance and request, should have the benefit of the statute, and yet that the subcontractor should be eliminated? True, there is no contractual privity between him and the owner. Neither is there between the laborer or the materialman and the owner, where employed by the contractor, but he stands in identically the same relation to the owner as the latter.

2. To facilitate the acquirement of the lien, however, the statute has made the original contractor an agent of the owner while in charge of the construction. Necessarily, he is given the primary control thereof. He may authorize some other person to superintend or take the management of the work, or the parties may agree that an architect or a special builder shall be in charge, but unless there is some such provision to shift the supervision he is necessarily intrusted with it. Being in entire charge, therefore, of the construction, he may subject the building to a lien by the employment of any person to perform labor or furnish materials therefor. A subcontractor, as we have seen, is within the range of such employment, so that he is manifestly within both the letter and spirit of the statute. The principle upon which mechanic's liens are upheld, where they are given to persons other than those contracting directly with the owner, is that the contractor becomes, for the purpose of the statute, an agent of the owner, and thus do all such persons indirectly con-

tract with the owner: *Osborn* v. *Logus*, 28 Or. 302 (37 Pac. 456, 38 Pac. 190, 42 Pac. 997). Some authorities base the right to a lien exclusively upon the circumstance that the labor and materials have been employed and used in the structure and have thereby inured to the benefit of the owner. In all cases supporting the doctrine, however, it is to be observed that there existed either an express or implied contract between the owner and the principal contractor for the construction of the improvement, which is not inconsistent with the view that the reason that such subcontractors and materialmen are entitled to impose a burden on the parties, depriving the owner of his property, is that the latter has impliedly, through the agency of the principal contractor, contracted for such material and labor: 20 Am. & Eng. Enc. Law, (2 ed.) 350, 351, and note to latter page.

3. The next question is one arising under the evidence, and is whether the plaintiff entered into one or two contracts with Dammeier Company for the construction of the Wilcox and Turple dwellings. The plaintiff testifies that Dammeier told him that he had some buildings he wanted him to figure on, and gave him the plans and specifications for the two; that witness looked them over, but did not want to carry the whole business, and took the specifications for one of them (the Wilcox dwelling) home with him, made the estimate, and told Dammeier that it figured up to $1,335, but that, if the water was in front of the house, he would do the work for $1,325; that on investigation it was found that the water was not in front of the house, and it was finally agreed that Dammeier Company would allow $40 for bringing it in, one pipe being all that was needed for both houses, and that witness then agreed to build the house for $1,345; that Dammeier thought there was a little difference in the other plans, and wanted witness to figure on them also, in

order to see if he could not do the work for less; that witness then looked them over again, and said that he would not spend any further time in figuring upon them, but that, if Dammeier wanted to let him have both houses at the same figure, namely, $1,345, he would take them, and that Dammeier agreed to it. George H. Dammeier testifies that he let plaintiff have the contract to build the two houses for Wilcox and Turple, and was to give him $1,345 for building each house, that amount being specified and agreed upon; that the contract for the two houses was made at the same time, at the same interview, but was not reduced to writing; that the witness had a contract with Wilcox to build him a house on his premises, also one with Turple to build a house on his premises, and that his contract with plaintiff was for building the two houses for $2,690; that they made up the price for the two houses by doubling his estimate for the one. It is a little difficult to determine from this testimony, which is, in substance, all that was offered upon the subject, whether the parties entered into separate contracts for the construction of each house, or a single one for the construction of both. The work of construction was carried forward upon both dwellings concurrently, the plaintiff letting subcontracts for doing portions of the work on both jointly, and it might be said that he treated them, so far as the employment of his workmen was concerned, as one undertaking. This is a circumstance of some weight, perhaps, in determining the character in which he contracted with Dammeier Company for their construction, whether for each separately or for both as an entire undertaking, but it is not conclusive. We think, however, the feature of controlling importance is that Dammeier Company had separate contracts with Wilcox and Turple for the construction of these buildings, and it was its purpose in dealing with plaintiff to have the structures erected in accord with its under-

taking with them. After plaintiff had made his estimate on the Wilcox house, Dammeier tried to get him to contract the Turple house for less, but he would not assent to it, and so they agreed upon $1,345 for each house. Having kept the estimates separate, perhaps for Dammeier Company's convenience and benefit, the most natural thing would be to carry on the negotiations to the end upon the separate basis. This is what plaintiff says they did, and is what we are warranted in concluding that they in fact did. The plaintiff was justified, therefore, in filing separate claims or liens: *Beach* v. *Stamper*, 44 Or. 4 (74 Pac. 208).

4. The evidence shows that Dammeier Company and its agent have made payments to plaintiff and his subcontractors and employés indiscriminately, without any reference to the idea of separate contracts, and it is insisted that it is impossible to say how much has been paid upon the Wilcox building and how much upon the Turple building, and that for this reason the liens are void. The payments were made without directions by the debtor as to how they should be applied, so the creditor, the plaintiff herein, had the right to make the application; and having admittedly made it upon an altogether equitable basis, the defendants cannot be heard to complain. He is at fault that he did not protect himself against the defalcation of the original contractor in allowing claims to be preferred against the building by exacting sufficient surety to insure a faithful compliance with the contract to construct.

5. But it is further urged that the subcontractor has made a profit, and that it is contrary to the spirit of the statute to allow him to do so and claim a lien for it; that the plain principle of the statute is, not to make the owner responsible for the performance of such contracts, but to require him to pay the reasonable worth of the labor or materials when they have added to the value of his prop-

erty. We have seen that the principle upon which the lien is given is that the subcontractor, artisan, laborer, or materialmen have by implication a contract with the owner, and, so long as they do not pass beyond the terms and scope of the original contract, which is the foundation of their privity with the owner for the purpose of the statute, they are entitled to claim a lien. In the present case the plaintiff is not only within the principle, but the work done must be considered to have been reasonable, for it was done at a price less by $165 on each building than that which the defendants contracted to pay Dammeier Company therefor.

These considerations affirm the decree of the trial court, and such will be the order of this court.    AFFIRMED.

## ON MOTION FOR REHEARING.

MR. JUSTICE WOLVERTON delivered the opinion.

In their petition for rehearing counsel urge that there remains a question that has not received the consideration of the court, which is, can the subcontractor, contracting separately with the original contractor for the construction of each of the two buildings, arbitrarily apportion the cost of materials and labor furnished at his instance upon the buildings indiscriminately, and claim a lien therefor? This mistakes the real question, which is, can the subcontractor under such conditions claim a lien for material and labor furnished under his contract—that is, having performed his contract with the original contractor, can he claim a lien for the amount remaining due him by the terms of that contract? In this form the question is answered by the main opinion. Being within the scope and authority of the original contract, the consideration agreed

upon between the original contractor and the subcontractor must be deemed to have been reasonable, and the subcontractor has his lien to the extent of such agreed consideration. How Smith, the subcontractor, performed his work of construction, whether by subcontracts with other mechanics or workmen, or by the purchase of material and the employment of labor by him direct, and their use in the buildings, or whether his subcontracts with others comprised the two buildings jointly, or the materials and labor were employed indiscriminately thereon, without keeping a separate account therefor with each building, could make no difference with the owner, so that his contract with the original contractor has been performed, and it is not costing him more than he agreed to pay for the work of construction. The subcontractors under Smith, if they made joint contracts for doing certain portions of the work as it respects both houses, and the materialmen and persons furnishing labor, if they furnished material and performed labor indiscriminately upon the two houses without keeping a separate account with each, might, and undoubtedly would, have trouble, under the decision in *Beach* v. *Stamper*, 44 Or. 4 (74 Pac. 208), in claiming a lien; but Smith is not environed or entangled with their difficulties. He had only to look to the performance of his subcontracts with Dammeier Company to entitle him to his liens, and, if his subcontractors, materialmen, and employés were paid indiscriminately by the original contractor or his agents, he had a right, as we have seen, to make the applications of payments as it pertains to his two contracts with Dammeier Company as he saw fit, the company not having itself made such applications.

This disposes of the question now insisted upon, and the rehearing will be denied.  REHEARING DENIED.