Argued 1 May, decided 25 June, 1907.

## SLOVER v. BAILEY.

90 Pac. 665.

MINERS' LIENS—RECORDING OF LEASE IN MINING RECORDS.

1. Any book kept by the proper officer as part of the records of his office, in which are recorded instruments affecting mines, is a book of "mining records" under Section 5668, B. & C. Comp., providing that miners' liens shall not attach to the interest of the owner if the work was done for a lessee whose lease was recorded in the "mining records" of the county before the work began.

RECORDING INSTRUMENTS IN DESIGNATED BOOKS.

2. If no particular book is designated in which an instrument must be recorded, it will be sufficient to record it in any book kept by the recording officer for that purpose.

From Josephine: HIERO K. HANNA, Judge.

Suit by George H. Slover against G. N. Bailey and others to foreclose sundry miners' liens, resulting in a decree as prayed for, from which defendants appeal. Submitted on briefs under the proviso of Rule 16: 35 Or. 587, 600.        REVERSED.

For appellants there was a brief over the name of *Hough & Blanchard.*

For respondent there was a brief over the name of *Reames & Reames.*

Opinion by MR. CHIEF JUSTICE BEAN.

This is a suit to foreclose sundry miners' liens for labor performed by the plaintiff and his assignors upon a group of quartz mines in Josephine County at the request and for the benefit of the defendants, Crawford, Smith and Poindexter, who were in possession under a lease or contract of purchase from the owner, which lease or contract had been previously recorded in a book designated as "Record of Mining Conveyances." The statute authorizing liens on mines in favor of laborers and materialmen provides that it shall not apply to the owner or owners when the mine is worked by a lessee, if a copy of the lease is recorded in the "mining records" of the county before the work is begun: B. & C. Comp. § 5668. The only question for decision on this appeal is whether the lease referred to was so recorded. To determine this question, it will be necessary to refer briefly to the legislation on the question of mining records.

By the law of 1866 (Hill's Ann. Laws 1892, § 3834) bills of sale and conveyances of placer or surface mining claims were required to be recorded in a book kept for that purpose by the county clerk to be called the "Record of Conveyances of Mining Claims." This section was repealed in 1898 (Laws 1898, p. 16), and the statute then enacted relating to mining claims required the locator of a quartz claim to file for record with the recorder

of the county, if there be one, who shall be the custodian "of mining records and miners' liens," otherwise with the county clerk of the county where the claim is situated, a copy of the notice of location, which shall be immediately recorded by that officer. In 1898 it was declared that mining claims shall be real estate and all conveyances and mortgages shall be subject to the provisions of law governing transfers and mortgages of realty as to this execution, recordation, etc.: B. & C. Comp. §§ 3979, 3981. In 1891 the legislature passed an act for laborers' and materialmen's liens on mining claims and prescribing the manner of their enforcement, but it provided that it should not apply to the owner of any mine where the same shall be worked by a lessee or lessees: Laws 1891, p. 76. This act was amended in 1899 (Laws 1899, p. 180) by requiring the lessor of the mine to have recorded in the "mining records of the county" where the mine is situated a copy of the lease, in order to protect him against liens for labor and material incurred by his lessee.

1. These are all the statutory provisions bearing upon the question now under consideration, and it will thus be observed that the law does not define mining records or prescribe of what they shall consist. As a consequence the County Clerk of Josephine County, soon after and about the time of the passage of the act of 1899, giving laborers and materialmen liens upon mines, opened three sets of books in which there have since been recorded all instruments filed in his office affecting the mining claims of his county. He labeled one set of these books "Miscellaneous Mining Records," afterwards changed to "Mining Records," in which he recorded location notices, water rights, affidavits of labor performed on mining claims, and the like. On one of the other sets he designated or labeled "Mining Conveyances" or "Record of Mining Conveyances," and in this there has since been recorded all agreements, contracts, options, leases and other instruments which affect the title to mining claims. The third set he labeled "Mechanics' Liens," in which liens have been recorded. The lease under which the mines were being operated at the time the labor was performed, for which

a lien is sought in the present suit, had been recorded in the book labeled "Mining Conveyances" prior to the time such labor was performed. This was the book in which it was usual and customary to record such instruments, and in our opinion such record was a compliance with the requirement of the law.

2. Where the book in which a particular instrument shall be recorded is prescribed by law, it must be recorded in such book; but, where no particular book is designated, recording it in any book kept by the officer for that purpose is sufficient: 24 Am. & Eng. Enc. Law (2 ed.), 106; *Glading* v. *Frick,* 88 Pa. 460; *Farabee* v. *McKerrihan,* 172 Pa. 234 (33 Atl. 583: 51 Am. St. Rep. 734) ; *McLanahan* v. *Reeside,* 9 Watts, 508 (36 Am. Dec. 136). It was necessary for the owner, in order to protect himself from liens for labor performed for his lessee, to have a copy of the lease recorded in the mining records; but, since the statute does not define mining records or prescribe that such instruments shall be recorded in any particular book, it was a sufficient compliance with the statute when it was recorded in a book kept by the proper officer for that purpose. The decree of the court will therefore be reversed, and the complaint dismissed.

Reversed.