Argued December 15, 1909, decided January 18, 1910.

## EQUITABLE SAVINGS & LOAN ASS'N *v.* HEWITT.

[106 Pac. 447.]

MORTGAGES—FORECLOSURE BY ACTION—PLEADING—SUFFICIENCY.

1. A mortgage contained a covenant that the mortgagor would keep the property free from all liens, and in case of failure to do so the mortgagee might pay them, whereupon the sums expended should be secured by the mortgage, and repayable on demand, and that on breach of any covenant the whole sum should become due and payable. In an action to foreclose, on the ground that plaintiff had been compelled to pay mechanics' liens, the complaint alleged that all the claims were valid liens. *Held,* that the complaint was insufficient, as it should have affirmatively shown the existence of all the material facts and proceedings essential to valid liens.

MORTGAGES—FORECLOSURE—PLEADINGS—ADMISSIONS.

2. A mortgagee sought to foreclose on the ground that the mortgagor had permitted valid mechanics' liens to be filed against the premises, contrary to the covenants of the mortgage, and that the mortgagee had been compelled to pay them. The complaint alleged that, after the execution of the mortgage, the mortgagor conveyed the premises to W. The answer of W. alleged: That she purchased the land and caused it to be conveyed to the mortgagor on an understanding that he should negotiate the loan from plaintiff, which the mortgage was given to secure; that plaintiff knew of the arrangement; that it was understood that plaintiff was to retain the sum secured and disburse it in payment of the costs of the erection of a building; and that plaintiff knew that the mortgagor was acting as the agent of W. *Held*, that a contention that no evidence was necessary to establish that the mortgagor was the agent of W., so as to sustain the validity of liens, which stated that the material was furnished to the mortgagor as W.'s agent, as such relation was shown by the answer and was without merit; the answer showing that the mortgagor was merely W.'s agent for the negotiation of a loan, and that the mortgagor had conveyed the property before the materials were furnished, etc.

MECHANICS' LIENS—CONTRACT—PRIVITY.

3. To establish a mechanic's lien, the claimant must connect himself with the owner, either by showing that he contracted with the owner or with his agent, or furnished the materials, or performed the work for one who was erecting the building, with the owner's consent.

MECHANICS' LIENS—CLAIM OF LIEN—FALSITY OF STATEMENT.

4. A claim of lien stated that claimant furnished materials and labor to the value of $45. Defendant claimed he had paid the claimant $50 on account. Claimant testified that he did some extra work, which he thought amounted to something like $70, and admitted that he was paid $25 on account. A witness testified that he paid claimant $50 on account, by a check which was in evidence, bearing claimant's indorsement. *Held*, that the fact showed the statement in the claim of lien untrue, and no lien attached.

MECHANICS' LIENS—CLAIM OF LIEN—STATEMENT OF ACCOUNT—EFFECT OF FALSE STATEMENT.

5. Under the statute requiring a lien claimant to file with the county clerk a claim containing a true statement of his demand, after deducting all just credits, if a claimant puts on record a statement which he knows to be untrue, or which by the exercise of reasonable diligence he could have known to be untrue, he loses his lien.

MECHANICS' LIENS—CLAIM OF LIENS—STATEMENT OF ACCOUNT.

6. Under the statute providing that a claim for a mechanic's lien shall contain a true statement of the demand, after deducting all just credits, the receipt of payment is a fact particularly within the claimant's knowledge, and he is bound to state it truly or lose his lien.

MECHANICS' LIENS—TIME FOR FILING LIEN.

7. An original contractor must file his notice of lien 60 days after completion of the contract, and not 30 days from the completion of the building.

MECHANICS' LIENS—NOTICE OF LIEN—SUFFICIENCY.

8. As an original contractor must file his notice of lien 60 days after the completion of the contract, a statement by him in a notice of lien that 30 days had not elapsed since the completion of the building was fatal to the validity of the lien.

From Multnomah: THOMAS O'DAY, Judge.

Statement by MR. JUSTICE SLATER.

This is a suit by the Equitable Savings & Loan Association against John D. Hewitt and others.

On September 13, 1907, this suit was begun to foreclose a mortgage on lot 5, block 9, of John Irving's First addition to East Portland, now in the city of Portland. The mortgage was executed by defendants John D. Hewitt and wife to secure the payment of their note, of the same date, in plaintiff's favor, for the principal sum of $3,962.40, payable in 120 equal monthly installments of $33.02 each, on the 20th of each and every month, commencing with January, 1907.

The consideration of the note was a loan of $2,500. The mortgage contains a covenant to the effect that the mortgagors shall keep the property free of all liens, and, if they fail so to do, the plaintiff may pay all liens placed thereon; that all sums paid for such purposes shall be secured by the mortgage, and be repayable on demand; and that, on breach of any covenant, the whole sum loaned, with accrued interest thereon, shall, at plaintiff's election, become immediately due and payable, together with a reasonable attorney's fee. The breach assigned is that, in violation of the covenant in the mortgage, the mortgagors permitted 13 separate mechanics' liens to be placed on the property, and refused and neglected to pay the same. The filing of each of these alleged liens is separately stated in the complaint. The form in which they are stated, using the first one as a sample, is as follows:

"That on the 6th day of June, 1907, defendants John D. Hewitt and N. Mabel Hewitt, in violation of the conditions of said mortgage, permitted Thomas A. Kelly and W. P. Thorsen, partners, doing business as Kelly, Thorsen & Co., to file in the office of the county clerk of Multnomah County, Oregon, a certain mechanic's lien, for the sum of $197.60, upon the property covered by said mort-

gage, and being for material furnished by said Kelly, Thorsen & Co., and used in the construction of that certain dwelling house situated upon the said described premises, which said lien was duly recorded in Book L, at page 382, Records of Mechanics' Liens for said Multnomah County; that, in accordance with the provisions of said mortgage, the plaintiff, on the 10th day of June, 1907, paid to said Kelly, Thorsen & Co., the full amount of said lien and costs, to wit, the sum of $201.10, no part of which has been repaid," etc.

The names of the other 12 lien claimants, and the amounts of the alleged liens, are: E. A. Stanton, for material furnished and labor performed, two liens, one for $138.60, and another for $45; M. J. Murphy, for material furnished and labor performed, $234; J. R. Davis, for material furnished and labor performed, $196; L. Olsen, material furnished and labor performed, $185; North Pacific Lumber Company, material furnished, $212.77; J. A. Smith, material furnished and labor performed, $180; Oregon Planing Mills, material furnished, $128.95; Nordby Lumber Company, material furnished, $25; C. K. Claggett, material furnished and labor performed, $35; Portland Hardwood Floor Company, material furnished, $203.52; A. E. Kautz, material furnished, $18.74. It is generally averred that all of said liens were filed within 30 days after the completion of the building, and were, at said times, valid and existing liens upon the premises; that the defendants, though requested to pay same by plaintiff, refused and failed so to do, whereupon they were paid by plaintiff, who has not been repaid any part thereof.

Mary G. Wright and C. C. Shay are also made parties defendant; it being alleged, as to the former, that on January 29, 1907, Hewitt and wife, by a deed, recorded upon the day of its execution, conveyed to her the lot previously mortgaged; and that she took the title, subject to plaintiff's mortgage; and, as to the latter, that

he claims some interest in the lot, the nature of which is unknown to plaintiff, but, whatever interest he may have, it is subordinate to the mortgage in question.

The relief asked is a personal judgment against Hewitt and wife for the amount due upon the loan, with interest thereon, and for the several amounts paid in settlement of the alleged liens, and for foreclosure of the mortgage and sale of the premises to pay the judgment. Mrs. Wright and Shay interposed a general demurrer to the complaint, upon the overruling of which they answered jointly, denying, upon information and belief, all the material averments of the complaint, except the corporate existence of plaintiff and the conveyance to Mrs. Wright, both of which were admitted, but specifically denying that her interest in the property is subordinate or subject to the lien of plaintiff's mortgage except as thereinafter set forth in a separate answer. It is thereafter alleged, in substance, that on November 28, 1906, Mrs. Wright entered into a contract with Shay to purchase the lot in question, and to have the title conveyed to Hewitt, to be held by him in trust, for the purpose of negotiating a loan of $2,500 from plaintiff, for the benefit of Mrs. Wright, to be used in the erection of a house, contracted to be erected by Shay upon the lot, which house was to cost $3,000; that immediately upon the negotiation of the loan Hewitt was to convey to Mrs. Wright; that plaintiff was to retain in its possession the amount of the loan, and direct the payment thereof, in discharge of the costs of labor and material in the erection of the building as it progressed, estimating the relative amount of work done and material furnished, and paying only a percentage of such estimate; that, when making said loan, plaintiff had knowledge of the alleged agreement, of the alleged fact that Hewitt was acting as the agent of defendants for the purpose of negotiating the loan, and that defendants were relying upon plain-

tiff so to disburse the proceeds of the loan, in the erection of the house, and to take care that the money was applied in payment of the cost thereof; that plaintiff violated the terms of this agreement by paying large sums of money to Hewitt, greatly in excess of the work done upon the building, and failed to take care that the money was paid towards the cost of the building; and that Hewitt converted to his own use the money so paid him. Other defenses, relating to the quality of the work done, for which some of the alleged liens were filed, are presented; but, as they are not material to the disposition of the case, they need not be stated.

The reply put at issue the new matter of the answer. After the filing of the complaint, T. C. Thronson, another lien claimant, was permitted to file his answer in the nature of a cross-bill, alleging the existence of a lien in his favor. The validity of his lien was not controverted; hence no attention need be given it. Upon a trial being had, findings were made, supporting the regularity and validity of the alleged liens, and a decree rendered, foreclosing the mortgage, and adjudging that, out of the proceeds derived from the sale of the property, plaintiff was entitled to be paid the amount due on the loan, and the amount paid by it in settlement of the liens, with interest, less an allowance for inferior work, from which decree Mrs. Wright alone has appealed. Reversed in so far as it affected the rights of appellant, and dismissed; affirmed in so far as it foreclosed a mechanic's lien of T. C. Thronson on cross-bill by him.

REVERSED IN PART: AFFIRMED IN PART.

For appellant there was a brief and an oral argument by *Mr. W. Y. Masters.*

For respondent there was a brief over the names of *Messrs. Cake & Cake* with an oral argument by *Mr. William M. Cake.*

MR. JUSTICE SLATER delivered the opinion of the court.

1. The first question presented for consideration relates to the sufficiency of the complaint in respect to the averments thereof intended to show the existence and validity of the several liens. The complaint contains no averment of default in the payment of the monthly installments then due upon the note, but expressly states that such payments were made up to and including August 20, 1907. As the suit was commenced on September 13th, before the next installment became due, plaintiff must rely upon the placing of a valid lien upon the property by another and the payment thereof by it, not only to anticipate the maturity of the obligation, to secure which the mortgage was given, but also to recover amounts paid in settlement of the alleged liens. The covenants of the mortgage, alleged to have been violated, constitute an indemnity contract, under which plaintiff seeks to recover the amounts paid by it on account of the alleged liens. But it is only liens which had legally attached to the property, and which might have been enforced against the building, that plaintiff had a right to pay and tack the amount thereof on to his mortgage. It was necessary therefore, in order to show a right to recover the several sums paid, that it be made to appear in the complaint that each claimant had a valid lien. In this the complaint is defective. To establish the existence of a valid lien, it must affirmatively appear from the complaint that the notice filed contained all the essential provisions required by statute; that it is proper in form, verified as required, and filed within time (*Pilz* v. *Killingsworth,* 20 Or. 432: 26 Pac. 305) ; and also the existence of all the material facts precedent, essential to the right to file a lien (13 Ency. Pl. & Pr. 970, 978). The filing of a "mechanic's lien" is stated, but there is no averment as to what it contained, nor is there a sufficient statement of facts, showing a right to file a lien.

It is stated, as mere conclusion of law, that all of the claims paid "were at said times valid liens upon said premises." The complaint in this respect is insufficient. *Price* v. *Doyle,* 34 Minn. 400 (26 N. W. 14) ; *Standiford* v. *Shideler,* 26 Ind. App. 496 (60 N. E. 168).

2. Plaintiff, however, attempted to make proof of the right of each claimant to file a lien, and the evidence offered for that purpose was received without objection; but the liens, as filed, were first offered, to which defendants objected, because no evidence had been offered, showing the work, for which the liens were claimed, had been done, nor that any contractual relation between Mary G. Wright and the claimants existed. The lien notices were received in evidence, subject to the objection and defendants excepted.

The lien notices filed by the Oregon Planing Mills, J. R. Davis, L. Olsen, and one lien of E. A. Stanton, Kelly, Thorsen & Co., North Pacific Lumber Company, A. E. Kautz, and M. J. Murphy state that the material and labor, for which the liens are claimed, were furnished upon a contract with John D. Hewitt, as a subcontractor under C. C. Shay, the original contractor, and that Mary G. Wright was the owner and reputed owner of the property. The evidence shows that Shay contracted with the owner to construct the building; but there is no evidence of any contractural relation between Hewitt and Shay, respecting such construction. The liens filed by J. A. Smith, C. K. Claggett, Nordby Lumber Company, and the Portland Hardwood Floor Company state that the material and labor, for which the liens are claimed, were furnished to Hewitt as the agent of Mary G. Wright, with her knowledge and consent. Here, also, there is an entire absence of evidence, showing any special agency of Hewitt, or any knowledge or consent of the owner respecting his alleged acts, or the furnishing to him by any of the claimants the material or labor for which the liens are filed.

It is claimed by plaintiff's counsel that no evidence was necessary to establish that Hewitt was in fact Mrs. Wright's agent, because, it is said, such relation is shown by defendant's answer. After having stated in the answer the legal effect of the contract between defendants Mary G. Wright and C. C. Shay, it is further alleged, in effect, that, pursuant to the agreement, Mrs. Wright purchased the lot and caused it to be conveyed to Hewitt, who negotiated the loan in question, with full knowledge by plaintiff that the loan was negotiated for her benefit, and was to be retained and disbursed by plaintiff in payment of the costs of the erection of the building; and that plaintiff knew that Hewitt was acting as the agent of these defendants, Mrs. Wright and Shay, in negotiating said loan, and knew that they were relying upon plaintiff to disburse the amount of the loan. The agency here spoken of is, by its terms, limited to the procurement of the loan, and does not extend to the erection, or procurement of the erection, of the building. Moreover, it is averred in the complaint, and admitted by the answer that on January 29, 1907, Hewitt and his wife conveyed the premises to Mrs. Wright. Thereupon, by his performance of all acts contemplated to be done by him, the limited agency, alleged in the answer as having been created by the contract, was terminated, so far as Hewitt was concerned. Now, the lien notices, offered in evidence, show that the transaction between the claimant and Hewitt, on which the alleged liens are based, occurred after the date of the conveyance by Hewitt to Mrs. Wright; hence the averments of the answer are not an admission of any contractural relation with Hewitt, respecting the construction of the building, nor of any special agency to procure for the owner material or labor therefor.

3. To establish a mechanic's lien upon a lot or building, the claimant must connect himself with the owner,

either by showing that the claimant contracted with the owner or his agent, or that he furnished the material or performed the work for one who was erecting the building with the owners' consent. *Litherland* v. *Cohn Real Est. & Inv. Co.*, 54 Or. 71 (100 Pac. 1) ; *Smith* v. *Wilcox*, 44 Or. 323 (74 Pac. 708: 75 Pac. 710).

4. This disposes of all the liens, but the one of E. A. Stanton for the sum of $45. It is stated in this lien that claimant, by a contract with Mary G. Wright, the owner, furnished material and performed labor of the reasonable value of $45, to be used, and which was used, in the construction of the building, no part of which has been paid. The defendants claimed that they had paid Stanton, at the time, $50, on account of the work performed and the material furnished, which forms the basis of his lien, and that the statement of account therein is false, and therefore that the lien is, on that account, vitiated. Stanton testified that, at the request of Mrs. Wright, he did some extra work, which he thinks amounted to "something like" $70; but he is not able to give a full statement of the items or value. He admitted that he was paid $25, on account of this work, by F. F. Wright, a son of Mary G. Wright, and was positive that the amount paid was not greater than that sum. Mr. Wright testified that he paid Stanton $50, for his mother, on this work, by a check on the Hibernia Savings Bank of Portland, which check is in evidence, bearing the date of May 1, 1907. It appears to have been indorsed by Stanton, and was paid May 4, 1907. No explanation of this discrepancy was made by Stanton.

5. The statute requires a lien claimant to file with the county clerk of the county "a claim containing a true statement of his demand, after deducting all just credits and offsets." If, in filing such claim, he puts on record a statement of the account which he knows to be untrue, or which, by the exercise of reasonable diligence, he could

have known to be untrue, he loses his lien. *Nicolai* v. *Van Fridagh,* 23 Or. 149 (31 Pac. 288) ; *Lewis* v. *Beeman,* 46 Or. 311 (80 Pac. 417).

6. The receipt of payment is a fact which is particularly within the claimant's knowledge, and he is bound to state it truly. *Lynch* v. *Cronan,* 6 Gray (Mass.) 531. There is no room here to entertain the supposition that the inaccuracy of the statement of account in the lien notice was the result of an honest difference of opinion as to the amount of the payment, such as appeared in the cases of *Rowland* v. *Harmon,* 24 Or. 529 (34 Pac. 357) and *Cooper Mfg. Co.* v. *Delahunt,* 36 Or. 402 (51 Pac. 649 : 60 Pac. 1). The statement of the account in the lien notice not being true, the lien did not attach.

7. Another objection, equally fatal to the validity of the lien, is that Stanton, by the averment of the lien notice, contracted with the owner. He is therefore the original contractor, and the time within which he must file his notice of lien is 60 days after the completion of his contract, and not 30 days from the completion of the building.

8. The statement in the notice is that 30 days had not elapsed since the completion of the building. This might be true, and still more than 60 days may have transpired since the completion of the claimant's contract to do particular work on the building. *Coffey* v. *Smith,* 52 Or. 538 (97 Pac. 1079).

Many other objections, touching the validity of these alleged liens, have been presented, some of which possess merit; but, as those considered are fatal to the maintenance of the suit, it is unnecessary to consider them here.

For the reasons stated, the decree, so far as it affects the rights of Mary G. Wright, will be reversed, and the suit dismissed; but that part of the decree foreclosing the lien of T. C. Thronson upon his cross-bill will not be disturbed.    Reversed in Part: Affirmed in Part.