Argued May 8, modified June 6, rehearing denied July 3, 1917.

# STUART *v.* CAMP CARSON MINING CO.*

(165 Pac. 359.)

**Equity—Amendment of Complaint—After Submission of Case.**

1. It was proper to allow plaintiff to amend complaint in equity suit to foreclose a mining lien after submission of cause, by attaching copy of notice of lien; the cause being considered upon its merits.

**Equity—Amendment of Complaint—Liberal Rule.**

2. The rule of amendment should be applied more liberally in equity suits than in actions at law.

**Mines and Minerals—Liens—Recording of Claim—Compliance with Statute.**

3. Where a claim of lien for work on mines was recorded in same book as mechanics' liens, and directly and indirectly indexed, this was sufficient compliance with Section 7446, L. O. L., providing that the county clerk shall record claims in a book kept for that purpose and indexed as deeds and other conveyances are required to be indexed, and Section 7421, providing substantially the same requirements for mechanics' liens.

**Evidence—Books of Account—Necessity of Authentication.**

4. Books of account offered in evidence must be authenticated by the oath of someone who made or directed the entry with authority, or, if this is not possible, by proof of handwriting.

**Evidence—Books of Account—Authentication.**

5. Witness' testimony *held* insufficient to authenticate time-book offered in evidence in mining lien foreclosure.

**Mines and Minerals—Liens—Construction of Statute—"Labor."**

6. "Labor" mentioned in miners' lien statute means actual physical labor unequivocally performed on the property.

[As to enforcement by miner of lien for work on mining claim, see note in 65 Am. St. Rep. 172.]

---

*As to authentication of books of account and entries as affecting admissibility in evidence, see note in 52 L. R. A. 590.   REPORTER.

*Interest—Allowance—Necessity of Statutory Provisions.*

7. Interest as such cannot be allowed on foreclosure of lien for work on mines, since the statute does not provide for it.

*Mines and Minerals—Liens—Allowance of Attorney Fees—Combined Claims.*

8. An attorney fee was properly allowed in a lump sum, although founded on several claims for mining liens assigned to plaintiff.

*Mines and Minerals—Liens—Effect of Failure of Lien.*

9. Failure of a mining lien in foreclosure proceedings does not necessarily involve validity of defendant's indebtedness to claimants.

From Union: JOHN W. KNOWLES, Judge.

This is a suit by E. J. Stuart against the Camp Carson Mining & Power Company, a private corporation, and others, to foreclose liens upon mining property of the defendant company. From a decree allowing a portion of plaintiff's demand, the mining company and Turner Oliver have appealed. Modified.

In Banc. Statement by MR. JUSTICE BURNETT.

The Camp Carson Mining & Power Company is a corporation said to have conducted a general mining and sawmill business on about 1,440 acres of unpatented placer mining ground in Union County, owning and possessing certain buildings thereon, together with ditches, flumes, and machinery used in operating the mines. For himself the plaintiff alleges in substance that he performed work and labor as a mechanic for the company upon the mining property at the agreed and contract price of $4 a day covering a certain number of days in April, May, and June, 1915, totaling $208.80, against which he allows a credit of $67.45 by supplies and cash, leaving a balance of $141.35. Then follows in the original complaint this allegation:

"That plaintiff performed the last of said labor and ceased to work on said property on the said 8th day of

June, 1915, and thereafter towit on the 22d day of July, 1915, duly prepared and verified his notice and claim of lien for the whole of said sum of $141.35, upon the whole of said described property, in the form and manner provided by law; and thereafter, towit on the 23d day of July, 1915, duly filed said notice and claim of lien in the office of and with the county clerk of Union County, State of Oregon, who then and there duly recorded said notice and claim of lien in Book D, Record of Mechanics' Liens of said county, at page 428 thereof, where said claim and notice of lien ever since has remained, and still remains so of record, that said record was and is a record kept by said clerk for the purpose of recording therein such liens, and that said clerk then and there duly indexed the record of said notice and claim of lien, in the manner and as deeds and other conveyances are required by law to be indexed.''

He avers that no part of the above-mentioned balance has been paid by the company or anyone else and that the whole thereof remains due, together with interest thereon at the rate of 6% per annum from June 8, 1915, until paid; that he paid $4.20 for filing and recording the lien, and that the sum of $50 is a reasonable amount to be allowed him as attorney's fee for foreclosing the lien. He also declares as assignee on twenty-one other lien claims for labor performed and materials furnished to the defendant mining company by other parties. The form of pleading is the same in each count.

A general demurrer by the company and Turner Oliver, also defendant, against the original complaint having been overruled, they filed an answer denying all the allegations of each count except the corporate character of the company and its ownership of the property mentioned.

After all the testimony was in and the case had been finally submitted the court permitted the plaintiff to file an amended complaint. The change consisted in adding to the quoted allegation above set out in each count these words:

"A true copy of said notice of lien is hereunto attached, marked 'Exhibit A' and made a part of this amended complaint."

The answering defendants move to strike out the new pleading on the ground that it

"does not purport to add any name or to strike out the name of any party from the pleading, and does not purport to correct any mistake in the name of any party or a mistake in any other respect, and does not purport to make the pleading conform to any facts proved, but substantially changes the cause of action after the case has been tried and submitted, * * and the court has no jurisdiction to consider such pretended amended complaint nor any discretion to permit the same to be filed, and no motion was attached to said pretended amended complaint asking permission of the court to file the same."

This motion was overruled and afterwards the defendants who appeared answered the amended complaint as before, traversing it and setting up the title of Turner Oliver to the property by virtue of a foreclosure of mortgage upon the property.

The reply put in issue all the new matter. The court made findings of fact and conclusions of law followed by a decree which rejected the claims assigned to plaintiff by Rudolph F. Peterson, S. S. Somerville, Gordon Land, F. F. Turner (on his second claim), Mrs. J. R. Somerville, and Hans Olsen. It allowed a portion of the plaintiff's claim and sustained the demands of Axel Wengren, O. J. Burnett, Charles Denny, J. A.

84 Or.—45

Shira, F. F. Turner (on his first claim), Cecil Merrill, L. W. Becker, Christy Nelson, Earl Taylor, R. E. Lindley, Elmer Somerville, J. R. Somerville, W. W. Dill, La Grande Grocery Company, and Sawyer-Clark Company, some in full and others only in part. The mining company and Turner Oliver alone appealed, there being no complaint of the decree on the part of the plaintiff or the other defendants, the latter of whom defaulted.                                      MODIFIED.

For appellants there was a brief and an oral argument by *Mr. Turner Oliver.*

For respondent there was a brief and an oral argument by *Mr. Francis S. Ivanhoe.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. The defendants assign as error the overruling of their demurrer to the original complaint and the action of the court in permitting the plaintiff to amend after the cause was submitted. Conceding that the original complaint was demurrable because it stated mere conclusions of law about the making and filing of the notice of lien, yet we may set it down as a defective statement of a cause of suit which might be aided by amendment. The matter in hand is not like *Golden Rod Milling Co.* v. *Connell,* 84 Or. 551 (164 Pac. 588), where we held that even in an equity suit the plaintiff had no right to amend his complaint after the cause had been submitted when the change involved the averment of a new and distinct cause of suit. The only attack made upon the new pleading of the plaintiff here was a motion to strike out the same which, being denied, the defendants answered it. It does not appear that the evidence re-

quired to support the second complaint was any different from that offered to prove the first.   Neither is it apparent from the record that the defendants were deprived of any defense upon the merits or that  they were denied any opportunity to take additional proof. For aught that the abstract discloses, the cause was considered upon its real merits under the issues formed by the amended pleadings.

2. This being an equity suit, heard and determined by the court, we think the rule of amendment should be applied more liberally than in the strict procedure of an action at law, and that unless the defendant mining company can show that its rights on the real merits were abused the error is negligible.

3. The defendants also complain that the court erred in admitting in testimony each of the twenty-two claims of liens, copies of which are attached to the amended complaint, for three reasons: a. That each of the notices fails to show that the contract of employment was made by anyone having authority to bind the defendant company; b. That each of the notices was recorded in the record of mechanics' liens and not in the record of miners' liens; c. It affirmatively appeared in the testimony that neither of said notices of lien was indexed as "deeds and other conveyances are required by law to be indexed"; and d. That it was clearly shown by the evidence that none of said claims for labor contained a true statement of claimant's demand after deducting all just credits and offsets, and each of them contained charges for matters and things other than for labor upon or in development of the mining property described in the complaint.   It is required by Section 7446, L. O. L., that "the county clerk shall record said claim in a book kept for that purpose, which shall be indexed as deeds and other conveyances are re-

quired by law to be indexed. * * '' In respect to what are commonly known as mechanics' liens, Section 7421, L. O. L., provides that ''the county clerk shall record said claim in a book kept for that purpose, which record shall be indexed as deeds and other conveyances are required by law to be indexed.'' Substantially the same language is used in providing for the filing of liens for laborers' wages due from any concern put in the hands of a receiver: Section 7441, L. O. L. The testimony in this case coming from the county clerk is to the effect that the book in which the claims in question were recorded was one kept for that purpose, although in the same volume mechanics' liens were likewise recorded, and that in the book there was a direct and indirect index citing the page whereon each claim was inscribed. This point is ruled against the contention of the defendants in *Slover* v. *Bailey*, 49 Or. 426 (90 Pac. 665). Mr. Chief Justice BEAN there says:

''Where the book in which a particular instrument shall be recorded is prescribed by law, it must be recorded in such book; but, where no particular book is designated, recording it in any book kept by the officer for that purpose is sufficient,'' citing authorities.

Other precedents are these: *Ivey* v. *Dawley,* 50 Fla. 537 (39 South. 498, 7 Ann. Cas. 354); *Faragee* v. *Mc-Kerrihan,* 172 Pa. St. 234 (33 Atl. 583, 51 Am. St. Rep. 734); *Switzer* v. *Knapps,* 10 Iowa, 72 (74 Am. Dec. 375); *Mee* v. *Benedict,* 98 Mich. 260 (57 N. W. 175, 39 Am. St. Rep. 543, 22 L. R. A. 641).

In *Osborn* v. *Logus,* 28 Or. 302 (37 Pac. 456, 38 Pac. 190, 42 Pac. 997), it was held in substance that it was unnecessary for the notice of lien in terms to connect the claimant with the owner in a contract relation. It was deemed sufficient to follow the words of the statute, but that case does not dispense with the necessity of

establishing such a relation as a matter of pleading
and proof at the trial either directly or through an
agent who may be such by virtue of the enactment or
by appointment of the owner: See also *Smith* v. *Wilcox,* 44 Or. 323 (74 Pac. 708, 75 Pac. 710); *Litherland*
v. *Cohn Real Est. Co.,* 54 Or. 71 (100 Pac. 1, 102 Pac.
303); *Equitable Savings & Loan Assn.* v. *Hewitt,* 55 Or.
329 (106 Pac. 447). In form we consider the notices
sufficient and the manner of indexing them complies
substantially with the directions of the statute in that
a means is provided whereby anyone searching the
book for a record of liens is directed by the index to
the page where he may obtain the information desired.
The other objection requires an examination of the evidence.

The principal question in the matter of testimony
hinges upon a time-book introduced in evidence by the
plaintiff. This was produced by a witness, W. W.
Dill, and he alone gives to it whatever of authenticity it
may have. Called upon to testify about the length of
time the men were at work and when they quit, he said:

"Well, I would have to go to the data because I
can't remember it.

"Q. Now, this data you speak of, state what that is.

"A. Why, I have the time-book of the company.

"Q. State whether you had anything to do with the
keeping of the time-book.

"A. I did. I kept the time-book from the 29th day,
I think it was the 29th day of June, until the 29th day
of July, when I left there. I kept the time-book most
of that time.

"Q. From that data do you know when these different men quit work there?

"A. I do.

"Q. Now, Mr. Dill, will you refer to such data as you
have and made yourself, that you can testify from, as
to when Mr. Stuart was there, and when he quit work.

"A. Well, I will have to go to the time-book."

Then an objection was sustained by the court to the effect that the testimony was incompetent except during the time that the book was kept by Mr. Dill himself, the rest being hearsay. The question being repeated, the witness said:

"Mr. Stuart left there before I got the time-book to keep time with. * *

"Q. You have knowledge of his working there, have you?

"A. Oh, yes, I know he was there and worked.

"Q. Have you any record in your possession that the company kept, of his time?

"A. I have as far as the time-book is concerned."

Objection was then made to the time-book being admitted for the reason that it is incompetent, irrelevant and immaterial, and it is not shown that he kept it nor that it is correct, but the court admitted it in evidence.

4. Books of account and the like are received in testimony as ancillary to the declarations on oath of a witness who either knows the fact in general and is compelled to refer to the books for detail or where having at one time knowledge of the fact he is compelled to refresh his memory from them, or, failing in that, he is able to state that he knew the fact when he made the entry and that it was entered correctly. Such writings are not evidence *per se*. They do not prove themselves and are not original evidence in the full sense of the word. Books, therefore, must be authenticated by the oath of someone who made or directed the entry with authority, if living and capable as a witness, otherwise by proof of his handwriting posting the entries: 10 R. C. L. 1174; *Harmon* v. *Decker*, 41 Or. 587 (68 Pac. 11, 1111, 93 Am. St. Rep. 748); *Mason* v. *Melhase*, 64 Or. 522 (130 Pac. 1134); *Lintner* v. *Wiles*, 70 Or. 350 (141 Pac. 871).

5. Dill only testifies that he kept the book most of the time from June 29th to the same date in the successive month. He does not even say that he kept it correctly or that he had knowledge of the facts upon which his entries were founded. He does not point out even what entries he made for that part of the time that he kept the book. The greater portion of the claims for which liens are sought to be enforced were founded upon labor alleged to have been performed before he ever had custody of the book. It is true that he says that a few days before he appeared in the Circuit Court as a witness he received the book indirectly from the secretary of the company in Seattle; but there is an utter absence of any sworn testimony authenticating it before he received it into his custody. Under all the authorities it must be laid out of the case as evidence.

The following claims assigned to the plaintiff depend entirely upon the translation which Dill made of the time-book in question to show how long the original claimants worked at the mine, viz.: Axel Wengren, Charles Denny, F. F. Turner (first claim), Cecil Merrill, L. W. Becker, Earl Taylor, Elmer Somerville, J. R. Somerville, and J. A. Shira. The latter was a witness in behalf of the plaintiff but made no statement respecting the length of time he himself labored, if at all, or the character of his services.

6. As to the claim of F. F. Turner, his own testimony shows that he was away from the mine much of the time; that while there he was a mere caretaker, and that his claim consists largely of hotel bills in La Grande and Union while he was thus absent. None of his evidence brings him within the rule laid down in *Durkheimer* v. *Copperopolis Copper Co.*, 55 Or. 37 (104 Pac. 895), holding that the labor mentioned in the statute for miners' liens means actual physical labor unequivocally performed upon the property.

The support of the following claims does not depend upon the time-book for the claimants themselves appeared in person as witnesses and testified respecting their services in kind and quantity as follows: E. J. Stuart, $141.35; O. J. Burnett, $130.50; Christy Nelson, $62.72; R. E. Lindley, $234.21; W. W. Dill, $563.40; La Grande Grocery Co., $172.13; Sawyer-Clark Company, $44.58. No assignment of error is made in regard to the finding of fact that these two latter claims being for groceries and other supplies furnished for use at the mine were true as stated in the complaint.

7. The demand for interest must be denied on the authority of *Sargent* v. *American Bank & Trust Co.,* 80 Or. 16 (154 Pac. 759, 156 Pac. 431). The claims last above mentioned will therefore be allowed and a decree entered foreclosing the same at those amounts, including the sum of $4.20 for each one as a fee for filing and recording the same.

8. The attorney fee will be fixed at $250. This is properly allowed in a lump sum although founded on several claims: *Bishop* v. *Henry,* 84 Or. 389, (165 Pac. 237.) The other claims must be dismissed for failure of proof.

9. We remember, however, that this is a foreclosure proceeding and that failure of the lien does not necessarily involve the actual validity of the indebtedness of the defendant company to the claimants who have fallen short in the testimony. As to them, therefore, the decree will be that this suit is dismissed without prejudice to the right of their assignee to recover from the defendant company by action at law or otherwise as he properly may be advised. Modified. Rehearing Denied.

Mr. Justice Bean took no part in the consideration of this case.