## NEVADA BANK OF SAN FRANCISCO *v.* TREADWAY and Wife.[1]

*(Circuit Court, D. Nevada.　January 23, 1883.)*

1. HOMESTEAD ACT OF NEVADA CONSTRUED.

A party claiming the benefit of the homestead act must record his written claim or declaration of homestead in the manner in the act prescribed.

[1] From 8th Sawyer.

2. WHEN DECLARATION TAKES EFFECT.

When such declaration is duly made and recorded, the property, from that instant, becomes exempt from forced sale, except for the debts and liabilities mentioned in the constitution and statute of the state.

3. SAME—SALE VOID.

Where declaration of homestead was duly made and recorded *five* days prior to advertised sale of premises, *held*, that such declaration was made and recorded within time; that the premises could not be legally sold; and that a forced sale thereof was void, the debt upon which the homestead was sold not being one of the class of debts enumerated and excepted in the constitution of the state.

4. DEDICATION—WHEN RIGHTS ATTACH.

Homestead rights attach whenever the property is dedicated to such use in the manner by law provided; and if such dedication is made at any time before forced sale, the property becomes exempt and cannot be legally sold.

Action of Ejectment.   The facts appear in the opinion.

*B. C. Whitman*, for plaintiff.

*Ellis & Judge* and *William Woodburn*, for defendants.

SABIN, J.   This is an action of ejectment, brought by the plaintiff, a corporation organized in the state of California, against the defendants, residents of Ormsby county, Nevada, to recover possession of certain lands situated in said Ormsby county, and described in the complaint filed herein.

The action was tried before the court, a jury having been waived. The complaint alleges that on the twenty-eighth day of July, A. D. 1880, plaintiff commenced an action in the district court of the second judicial district of the state of Nevada, in and for said Ormsby county, against the defendant Aaron D. Treadway, to recover the sum of $9,816.50, with interest thereon at the rate of $1\frac{1}{2}$ per cent. until paid; that a writ of attachment was duly issued out of said court in said action at the commencement thereof, which was duly levied upon certain real estate of said defendant A. D. Treadway, and being the property in controversy in this action; that thereafter, on the thirteenth of June, 1881, plaintiff duly recovered judgment in said action against said defendant A. D. Treadway for the sum of $10,184.60 damages, and $108.35 costs; that on the ninth of July, 1881, execution was duly issued out of said court upon said judgment, which was duly levied upon the lands and premises attached, and now the subject of this action; that on the fifth day of August, A. D. 1881, after due and legal notice of the sale thereof, said lands and premises were struck off and sold to plaintiff by the sheriff of said county for the sum of $4,500, and certificate of sale thereof duly issued to plaintiff; that thereafter, on the eleventh day of February, 1882, more than six months from the date of sale (six months being the time allowed by Nevada statute from date of sale for redemption) having elapsed, plaintiff received a sheriff's deed of said lands and premises, which was duly recorded in said county.

Plaintiff alleges ownership and right of possession under said deed. Plaintiff further alleges that, at the date of the levy of the writ of attachment, and at the date of the levy of the execution upon said

lands, the defendant A. D. Treadway was an unmarried man, "not having the care and maintenance of minor brothers or sisters, or either, nor of a brother's or sister's minor children, or any such, nor of a father or mother, or either, nor of grandparent or parents, nor unmarried sister or sisters living in the house with him." Plaintiff further alleges that, on the first day of August, 1881, the defendants intermarried; that on the fifth (first?) day of August, 1881, they filed a declaration of homestead on the premises, and that since that date they have and now claim said premises as a homestead, and withhold the same from plaintiff. Plaintiff demands restitution of the premises, and $500 damages and costs of suit.

Defendants plead a technical denial of the levy of the writ of attachment, before mentioned; the recovery of judgment, levy of execution, and sale thereunder. They deny the ownership by plaintiff of said premises. They plead, affirmatively, that since and including the first day of August, A. D. 1881, they have been, and now are, husband and wife; that since said date they have actually and continuously resided upon said premises as a homestead, and have used and claimed the same as such; that they, or either of them, have not, for more than 20 years last past, had or claimed any other homestead; that the defendant A. D. Treadway has resided upon said premises continuously since the year A. D. 1860, and that he has had residing with him thereon the minor children and grandchildren of his brother; that on the first day of August, 1881, they duly executed and caused to be recorded, on that day, in the proper office of said county, their declaration claiming said premises as a homestead; that they now claim said premises as a homestead; and that the alleged sale thereof by the sheriff of Ormsby county, on the fifth day of August, 1881, was and is void.

The plaintiff offered and read in evidence the judgment roll and record,—in the suit of plaintiff against the defendant A. D. Treadway, commenced July 28, 1880,—the writ of attachment issued therein, and the sheriff's return thereon, showing levy of the same upon the premises in question; the judgment, execution, and return thereon showing the sale of the premises, August 5, 1881, by the sheriff to plaintiff, and the sheriff's deed therefor, dated February 11, A. D. 1882, duly recorded. Also the record evidence of the lawful marriage of defendants at said Ormsby county, on the first day of August, A. D. 1881.

Defendants offered in evidence a declaration of their claim of homestead of said premises, dated and duly executed August 1, 1881, and duly recorded in the proper office in said county on that day. Defendant A. D. Treadway testified that defendants were lawfully married on the first day of August, 1881, and are now husband and wife; that since said date they have actually and continuously resided upon said premises as a homestead; that they had and claimed no other homestead; that he had resided on said premises for the

past 20 years or more; that until August 1, 1881, he was an unmarried man; that for a portion of the time during which he had resided on said premises he had residing with him minor children and grandchildren of a brother, whom he supported and maintained. The above is the substance of the evidence offered by both parties.

The declaration of homestead, offered and read in evidence by defendants, was, in form and substance, a full compliance with the statute of the state relative thereto. Under the facts established by the pleadings and evidence the question decisive of this case is this: Were the premises in controversy subject to forced sale on the fifth day of August, 1881, upon the judgment of plaintiff, recovered June 13, 1881, against the defendant A. D. Treadway?

Section 14, art. 1, of the constitution of the state of Nevada, declares:

"The privilege of the debtor to enjoy the necessary comforts of life shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale for payment of any debts or liabilities hereafter contracted."

Section 30, art. 4, of the same constitution, further provides:

"A homestead, as provided by law, shall be exempt from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife when that relation exists; but no property shall be exempt from sale for taxes, or for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon: provided, the provisions of this section shall not apply to any process of law obtained by virtue of a lien given by the consent of both husband and wife; and laws shall be enacted providing for the recording of such homestead within the county in which the same shall be situated."

This constitution was adopted in 1864, and has not been amended in these particulars.

We need not discuss the justice or expediency of exemption laws, since it is purely a matter of domestic policy of each state, both as to whether there shall be any exemption of real or personal property, or both, from forced sale, and the extent of such exemption. In nearly if not quite all of the states and territories laws of this character prevail, but differing widely as to the extent of the exemption and the manner of the debtor's availing himself thereof. Enacted in the spirit of humanity and beneficence, they have received almost universal approval, and are to be fairly and liberally interpreted to secure the object sought.

The first legislature of the state, which convened after the adoption of the constitution, passed an act, approved March 6, 1865, giving effect to these provisions of the constitution. Comp. Laws Nev. 60. This act provided for the selection and exemption of a homestead, not exceeding in value $5,000.

In 1879 the legislature amended this act and provided as follows:

"The homestead, consisting of a quantity of land, together with the dwelling-house thereon and its appurtenances, not exceeding in value five thousand

dollars, to be selected by the husband and wife, or either or them, or other head of a family, shall not be subject to forced sale on execution, or any final process from any court, for any debt or liability contracted or incurred after November 13th, in the year of our Lord 1861, except process to enforce the payment of purchase money for such premises, or for improvements thereon, or for legal taxes imposed thereon, or for the payment of any mortgage thereon executed and given by both husband and wife when that relation exists.

"Said selection shall be made by either the husband or wife, or both of them. or other head of a family, declaring their intention in writing to claim the same as a homestead. Said declaration shall state, when made by a married person or persons, that they, or either of them, are married, or, if not married. that he or she is the head of a family, and they, or either of them, as the case may be, are, at the time of making such declaration, residing with their family, or with the person or persons under their care and maintenance, on the premises, particularly describing said premises, and that it is their intention to use and claim the same as a homestead, which declaration shall be signed by the party or parties making the same, and acknowledged and recorded as conveyances affecting real estate are required to be acknowledged and recorded; and from and after the filing for record of said declaration the husband and wife shall be deemed to hold said homestead as joint tenants."

There are several other provisions in the act, which need not be given here, as they do not affect the case at bar. The portion of the act as above quoted is the law now in force in this state so far as is pertinent to this case. It will be observed that the statute is silent as to the time when a declaration of homestead must be executed and recorded, in the proper county, to bring the homestead within the protection of the statute. It is a familiar principle governing the federal courts that in giving effect to or in construing the constitution or laws of a state, involving only a question of the domestic policy of that state, they will look to the decisions of the court of last resort of such state for a correct interpretation thereof, and will be guided and controlled thereby. Were we, then, in doubt, under section 30, art. 4, of the constitution of Nevada, and under the statute, as above quoted, as to the time when the declaration of homestead must be executed and recorded to protect the homestead from forced sale, we should look for the rule relative thereto in the decisions of the supreme court of this state, and if such rule has been established by that court, this court would be controlled thereby in giving effect to the homestead law. It is believed that this rule has been established by that court clearly and fully. It should be remembered that the homestead act of 1865 was silent as to the time when declaration of homestead should be filed and recorded. In this respect the act of 1865 and that of 1879 are similar, and they are also similar as to the mode of selecting and recording a homestead claim. In *Hawthorne* v. *Smith*, 3 Nev. 182, the court had occasion to discuss this question of liens upon homesteads, under the act of 1865, which act, in this respect, differs in nowise from the act of 1879.

The facts of the case, as stated by the court, were:

"In the month of March, 1866, appellants (Hawthorne and wife) moved into a house which, with the land attached thereto, is now the subject of litiga-

tion. In September of the same year one Robert Woodburn brought suit against W. A. Hawthorne, (one of the appellants,) and, at the time of bringing suit, sued out a writ of attachment and had it levied on this house and grounds. In December of the same year judgment was rendered in favor of plaintiff, and in the early part of the year 1867 execution was issued, and the property previously levied on under the attachment was advertised for sale. In October, 1866, (after the attachment levied, but before judgment,) the appellants filed a declaration of homestead on the property now in dispute. When the sheriff advertised the property for sale the appellants filed their bill, praying an injunction to restrain the sale, and claiming that the property was exempt under the constitution and homestead act. The district judge issued a temporary restraining order, and required the defendant, Smith, who is sheriff of Ormsby county, to show cause at a certain day why a perpetual injunction should not be granted. At the hearing of this rule the judge refused to grant an injunction, and discharged the restraining order. From this ruling in regard to an injunction the plaintiffs appeal."

The supreme court reversed this ruling of the district judge, and directed the lower court to issue an injunction pending the action, and to "take such further steps as the equity of the case may require."

The court says:

"It is evident the constitution intended that, at all times, the homestead of a family should be exempt from forced sale, except in a few enumerated cases. It is equally evident the legislature intended to carry out this policy of exempting the homestead. If, then, it is the policy of the law to exempt the homestead of insolvent debtors from forced sale, certainly we should not hold that a creditor can defeat that policy by any act of his, unless the statute clearly gives that right, or clearly points out the contingency upon the happening of which the debtor should lose the benefit of the exemption. Here the property was clearly a homestead in fact. If it lacked anything of being such a homestead as the law exempts, it was only the execution and filing for record of a declaration by the husband and wife, or either of them, that they had selected it as such. Upon the filing of such declaration the statute says it shall be exempt. It is hardly claimed by respondent that the existence of debts or the actual insolvency of appellants at the time of filing would have affected their right to select the homestead and claim the exemption. If, then, the prior insolvency of a party will not prevent his claiming the exemption, we see no reason why an attachment should. The law declares property thus selected shall be exempt from execution. It makes no exceptions. It is no greater hardship to exempt it from an attaching creditor than any other creditor. The object of the attachment law is not to allow the creditor to seize property which is exempt from execution, but to secure that which is liable to such process.

"As the law is totally silent as to the time when a selection shall be made of the homestead, declares no penalty for failing to select, makes no reservation in favor of liens acquired before selection, but simply says that when selected it shall be exempt from forced sale, we are forced to the conclusion that, after the selection is made and filed for record, no levy upon or sale of the homestead property can be legally made, except for those classes of debts mentioned in the constitution."

This decision was rendered in 1867. Twelve years thereafter, during which time this decision had stood unquestioned and had virtually become a rule of property throughout the state, the legislature

passed the act of 1879, amending the act of 1865 in some particulars, but not in respect to the time when selection of homestead must be made and recorded. The law was left as it had stood before, and as it had been expounded by the supreme court.

The legislature, in 1879, virtually gave its sanction to the ruling of the court, made in 1867, upon this point, from the fact that it made no change therein. It is probable that this non-action of the legislature on this point was something more than accidental. The exemption of the homestead from forced sale—a refuge for the family in time of financial distress—is a matter near to almost every family in the state, and we are not at liberty to suppose that the legislature, in 1879, in amending in some particulars the act of 1865, was careless, indifferent, or ignorant upon this vital point, as to when the declaration of homestead must be filed and recorded, or that it intentionally left so important a matter in doubt. On the contrary, we are compelled to believe that the legislature knew the construction which had been placed upon the constitution and the act of 1865, in this respect, by the supreme court, and which for 12 years had been the settled law of the state; that it was satisfied therewith, and did not wish to, and would not, make any changes therein in this respect. And this is a well-established rule of construction in like cases with the present. In 1880 the supreme court reaffirmed the doctrine established in *Hawthorne* v. *Smith,* quoting, in terms, the latter portion of the opinion in that case, as above given. *Lachman* v. *Walker,* 15 Nev. 425.

The court further decided in this case that a party must file for record his written claim or declaration of homestead, as prescribed in the act of 1879, in order to avail himself of the benefits of the act.

In *Estate of Walley,* 11 Nev. 264, in discussing the probate and homestead acts, the court says:

"Each is intended to exempt the homestead from certain liabilities; but the one—the homestead act—exempts it from liability for the debts of the owner, so long, at least, as he continues to be the head of the family, no matter at what time, after November 13, 1861, the debts may have been contracted,—whether before or after the family relation commenced, or before or after the homestead was dedicated."

These decisions of the supreme court of the state seem decisive of this case, and are binding upon this court. In them it is distinctly held that "after the selection [of homestead] is made and filed for record, no levy upon or sale of the homestead property can be legally made, except for those classes of debts mentioned in the constitution;" and that the homestead is exempt from liability for debts of the owner, "so long, at least, as he continues to be the head of a family, no matter at what time, after November 13, 1861, the debts may have been contracted,—whether before or after the family relation commenced, or before or after the homestead was dedicated."

In the case at bar it is not claimed that the original liability or

debt upon which plaintiff recovered judgment against the defendant
A. D. Treadway, June 13, 1881, and upon which this property was
sold, comes within any of the classes of debts or liabilities excepted
and mentioned in the constitution, and for which a homestead may
be sold.   Neither is it claimed that this property exceeds $5,000 in
value; nor that the declaration of homestead filed for record by de-
fendants, August 1, 1881, was not a full compliance with the statute
relative thereto; nor that defendants were not at that time, and now,
lawful husband and wife, and living upon said premises as their
homestead.   From the instant the declaration of the homestead was
filed for record, the property in controversy became and was a "home-
stead as provided by law," and from that instant it came within the
protection of the constitution and the statute, and could not be levied
upon, or sold for or upon, any debt or liability not excepted and
mentioned in the constitution.

It was clearly the intention of the constitution to protect the home-
stead from forced sale, except for the class of debts mentioned, and
the legislature was charged with the duty of giving effect to the pro-
vision of the constitution, which it did in the passage of the act of
1865, and the subsequent act of 1879.   It prescribed the value of
the homestead, and the manner in which it should be selected, and
when so selected the homestead rights attached, and it became ex-
empt from forced sale.   The constitution nowhere subjects the home-
stead to sale for debts which the owner may have incurred prior to
his marriage, or to liens which may have accrued against it prior to
its dedication as a homestead.   Can we possibly suppose or presume
that the constitutional convention which framed section 30 of article
4, when excepting certain debts and liabilities for which the homestead
might be sold, intended also to include other liabilities not enumer-
ated, and which should be left to the shifting decisions of courts to
enforce? or can we presume that the legislatures of 1865 and 1879
so intended in the passage of the homestead act and the amendments
thereto?

The constitution and the statutes both clearly define the debts and
liabilities for which the homestead may be subject and liable, and
this limitation of liability is the exclusion of all others.   We are not
at liberty to add to or take aught from the constitution or statute not
necessary to a clear understanding thereof.

It is urged by plaintiff (1) that defendants were not in a condition
to avail themselves of the benefits of the homestead act prior to the
time when the lien of plaintiff's judgment against the defendant
A. D. Treadway attached upon the premises, from the fact that de-
fendants were not married until August 1, 1881, while said judgment
was rendered June 13, 1881; and (2) that the lien of that judgment
is prior and superior to any homestead rights which defendants may
or could have acquired subsequent thereto.   The first point is dis-
tinctly ruled upon by the supreme court of Texas in the case of

*North* v. *Shearn*, 15 Tex. 174, and is decided adversely to plaintiff's position in this case.

The same court has also ruled upon the second point in the case of *Stone* v. *Darnell*, 20 Tex. 14.    In this case the court says:

"The right of the homestead is placed by the constitution above any claims or liens for the satisfaction of debts.    If this were not the rule, no debtor could ever procure a homestead until he discharged all previous judgments, for they are liens upon his lands, or until he had paid all judgments rendered since his purchase of lands, but before he was able to erect a dwelling-house on the portion selected by him for his homestead."

The constitution of Texas is very similar to that of Nevada, in reference to homestead exemption, and the decisions of the supreme court of that state are applicable in Nevada.    In addition to the cases above cited, see, also, *Macmanus* v. *Campbell*, 37 Tex. 267.

It is true that, in some of the states, it is held that a lien of attachment or judgment, if acquired prior to the selection or recording of the claim of homestead, takes precedence of the homestead claim, thus virtually defeating the very object of the act.    Thomp. Homest. & Ex. § 317 *et seq.*

It is believed, however, that this is not the general rule.    Smyth, Homest. & Ex. §§ 176–180, and cases there cited; 16 Cal. 214; 25 Ill. 221; 43 Ill. 297; 53 Ill. 377.

Resting the case at bar upon the constitution and statute of Nevada, and upon what clearly seems to be the weight of authority of the adjudicated cases upon the points in issue in this case, the court is compelled to hold that the sale of the premises in controversy by the sheriff, on the fifth of August, 1881, was and is wholly void, and plaintiff took nothing thereby.

Let judgment be entered for defendants.