BARNES & CO. *v.* BUCHANAN ET AL.

[67 South. 462.]

HOMESTEAD. *Liabilities enforceable. Decree in equity.*

Specific liens fixed by the decrees of courts of equity have no greater force upon homestead rights than judgments pronounced by, and executions issuing from, law courts, and where plaintiff conveyed land to his brother, defendants, his creditors, secured a decree cancelling the deed on the ground that the conveyance was fraudulent as to them, and had a commissioner appointed to sell the land to satisfy this debt and thereupon plaintiff married after the rendition of the decree, but before sale under it, and moved on the land, and occupied and claimed a homestead therein, his claim was valid and the creditor's right was subject to his homestead exemption.

Appeal from the chancery court of Marion county. Hon. R. E. Sheehy, chancellor.

Suit by J. C. Buchanan and another against Barnes & Company. From a judgment for plaintiff overruling a demurrer to the complaint, defendants appeal.

The facts are fully stated in the opinion of the court.

*Henry Mounger,* for appellants.

It will be seen from the statement of facts that the amended bill sets out the facts necessary to be considered by the court and that the proposition to be decided by this court is whether J. C. Buchanan, the appellee, can legally claim as exempt to him, under the homestead laws of the state, eighty acres of land which he had previously sold and which the court by its decree, had held to be a fraudulent sale, and on which the court had declared a lien in favor of the appellant, Barnes & Company. The appellees insist that he can legally claim such exemption, and the appellants claim that he cannot. The court will bear in mind that no attack is made upon the validity of the decree; that the decree was made on October 6, 1910, and that J. C. Buchanan, the appellee, re-purchased the land on October 7, 1910, the day following the rendition of the decree and that he was at that time unmarried. See *Shaw* v. *Millsaps,* 50 Miss. 380; *Martin* v. *Tillman,* 70 Miss. 614.

In the note to *Sifford* v. *Cutler,* reported in 135 Am. St. Rep. at page 330, may be found an able and exhaustive discussion of this subject and I cite the same for the reason that the discussion is a very recent one, the principal case having been decided in April, 1910.

Attorneys for appellees base their contention upon the case of *Dulion* v. *Harkness,* reported in 80 Miss. at page 8. The facts in that case are gathered from the opinion and I contend that the case does not decide the point at issue in the case at bar. There is some diffi-

culty in seeing just what the court did decide in this case and it is necessary to consider some of the expressions used in the light of the particular point being considered by the court.

Beginning in the tenth line from the top on page 14, Justice TERRAL, in delivering the opinion of the court, said: "By the plain letter of section 4226, Code 1892 (the same as 4776, Code 1906), the only consequence of a voluntary conveyance of property by a debtor, is to render it invalid to his existing creditors because as to them it is inequitable but it is not inequitable to allow him to claim any rights he may have in the property to which his title still adheres as to creditors by construction of law. If it is his as to creditors, it is his so as to allow him to claim a homestead exemption in it."

The above language must be considered in the light of the facts which the learned judge was there considering. Harkness had made a voluntary conveyance of a lot of land in the city of Biloxi to his wife, Sadie Harkness, Dulion and Tucei had filed creditor's bills against Harkness to set aside the conveyance of the lot of land sold by him to his wife as fraudulent and void as to them, and to subject the property to the satisfaction of their demands, and had obtained a decree. Thereafter Harkness moved upon and occupied the property as a homestead and filed their supplemental bill to have their homestead right established and secured, and thereupon obtained an injunction against the sale. The title to this property was in the wife and the claim of a homestead exemption may be based upon the right of the wife as well as upon the title of the husband. The two were making joint claim to the property as being exempt under the homestead law. The facts of that case are not identical with the facts in the case at bar because the original grantee was the wife and there was no conveyance after the decree

of the court attempting to defeat the operation of the decree, as was the situation in the case at bar. I contend, therefore, that the facts in the case of *Dulion* v. *Harkness,* make it a different case from the case at bar.

I submit further, that the case of *Harkness* v. *Dulion,* should be read in connection with the case of *Cox* v. *Wilkinson,* reported in 81 Miss. 503. Let it be noted that the Harkness case was decided in March, 1902, and was delivered by Justice Terral, and that the Cox case was decided in October, 1902, and the opinion delivered by the same able judge.

In *Brantley* v. *Batson,* the court in 84 Miss. 411, concludes its opinion with the following words: "Homestead rights are to be protected according to law, but are not to be perverted into instruments of fraud."

In 15 Am. & Eng. Ency. of Law, at 556, the general rule is laid down that no homestead can be claimed against creditors in land not owned by the debtor. There must be a title capable of transfer by levy or sale under execution or a decree, and if the claimant has no such title, then he does not have such title as the law will protect. I therefore submit that the possession of J. C. Buchanan was not a right which the homestead law will protect. The title he acquired, by the conveyance on October 7th after the decree, was rendered, a right subject to the decree and inferior to the rights of Barnes & Company. If the contention of the appellee is sustained in this cause, the effect is that his fraudulent conveyance served the purpose of keeping the property beyond the reach of Barnes & Company and hindered and delayed them for about two years and until the appellee Buchanan could marry the appellee, Maud Buchanan, and they are given the benefit of this delay. If this fraudulent conveyance was wrong, they are given the advantage of their own wrong, and hence the homestead law is converted into an instrument of

fraud. I submit that a court of conscience cannot permit a transaction like this to work. That it would be contrary to good conscience as well as contrary to the authorities which I have cited.

*Lamar Hennington,* for appellees.

It is well settled by the decisions of this court that one may hold property as exempt homestead by becoming the head of a family and moving on the land after the levy under execution, or decree. See *Trotter* v. *Dobbs,* 38 Miss. 198; *Letchford* v. *Cary,* 52 Miss. 793; *Dulion* v. *Harkness,* 80 Miss. 13.

It is also held by the case of *Dulion* v. *Harkness,* cited above, that where the chancery court sets aside the conveyance as a fraud against creditors that "by the plain letter 4226, Code of 1892 (4776, Code of 1906), the only consequence of a voluntary conveyance of property by a debtor is to render it invalid as to his existing creditors, because as to them it is inequitable; but it is not inequitable to allow him to claim any rights he may have in the property to which his title still adheres as to creditors by constriction of law. If it is his as to creditors, it is his so as to allow him to claim a homestead exemption in it." This is as plain as it could be stated. Proceeding in the case of *Dulion* v. *Harkness,* cited above, the court says: "In *Kuevan* v. *Specker,* 11 Bush, 3, a case similar to this, the court said: 'These appellees are asking now to subject the property to the payment of their debts, upon the ground that the conveyance to the son was fraudulent and void as to creditors; and, if made liable by the chancellor, it must be for the reason that it is still the property of Theodore Kuevan, the debtor. If his property, himself and wife being still in possession, the creditors will not be allowed to say that we can subject it to satisfy our demands because he is still the owner, and at the same time deny his right to a home-

.stead for the reason that he is not the owner. If the property is made liable for Theodore Kuevan's debts for the reason that the conveyance is fraudulent and void, it must be sold. subject to the exemption made by law for the . benefit of the debtor. A fraudulent ·conveyance does not enlarge the rights of creditors, but ·only leaves them to enforce such rights as if no. conveyance had been made.'' To the same effect are *Vogler* v. *Montgomery,* 54 Mo. 575; *Cod* v. *Wilder,* .2 Dill. 45, Fed. .Cas. No. 3308; *Sears* v. *Hanks,* 14 Ohio St. 298, 84 Am. Dec. 378; *McFarland* v. *Goodman,* 6 Biss. 111, Fed. Cas. No. 8789; *Crummen* v. *Bennet,* 68 N. C. 494; Wait, Fraudulent Conveyances, section 46; Thompson, Homestead Exemptions, section 408.

It is contended that one must own an assignable interest in property in order to claim a homestead exemption. This is true. But the court having cancelled .and set aside the conveyance from appellee, J. C. Buchanan to J. S. Buchanan as against the appellant, the property was never conveyed and still belonged to J. ·C. Buchanan, the appellee and as against Barnes & Company he owned an assignable interest in it.

The case cited by counsel for appellant, *Cox* v. *Wilkinson,* 81 Miss. 503, does not apply to the case at bar and is not an authority on the point involved. In that case the facts were as follows: Cox owed Wilkinson .and other creditors who had a writ of attachment issued and levied upon certain personal property as the property of Cox. But Cox had sold this property to Stewart about seventeen days before the levy. After the property was levied upon, Stewart filed a claimant's affidavit under the statute and an issue was made up for the trial of the rights of property and tried and decided in favor of the attaching creditors and a *venditioni exponas* was issued and the goods advertised for sale · thereunder. Before the sale, written notice was given to the sheriff that Cox claimed his exemption of two

hundred and fifty dollars worth of personal property allowed by section 1971 of the Code of 1892, and the sheriff took an indemnifying bond and sold the stock of goods. After the sale, Cox filed suit for double damages, as provided by section 1968 of the Code of 1892. And the court held that it was Stewart's right to set up and claim the exemption, but he did not do it and that if he lost or waived the right it is a matter of which Cox could not complain.

The trial of the right of property had already been had and Stewart had waived the defense which he ought to have set up that the property was exempt when Cox sold it to him, but, as he failed to do this, it was too late for any one to make such a claim afterwards.

It is well settled by this court that all laws granting exemptions must be liberally construed in favor of those entitled to the exemption and especially is this so in cases of homestead exemption.

Cook, J., delivered the opinion of the court.

The bill of complaint in this case alleges that complainant, J. C. Buchanan, was the owner of a certain tract of land not exceeding one hundred and sixty acres, nor exceeding two thousand dollars in value; that on March 8, 1909, he conveyed this land by deed to his brother, J. S. Buchanan; that at the time this deed was executed complainant was a single man, a bachelor; that appellants, Barnes & Co., a creditor of complainant, on January 28, 1910, filed a bill in the chancery court alleging that this conveyance was fraudently executed to hinder and delay said complainant in the collection of its debts against J. C. Buchanan, complainant in the present case, and praying that said deed made by J. C. Buchanan to his brother be canceled, and that the court decree that said Barnes & Co. have a lien on said land for the payment of said debt; that a commissioner

be appointed to sell said land, and out of the proceeds of said sale pay to Barnes & Co. its indebtedness against said J. C. Buchanan. Appellants further allege that he answered said bill of complaint denying fraud, but the court nevertheless, by its decree, canceled said deed to his brother, and ordered a sale of the land to satisfy the claim of Barnes & Co., appointing I. C. Welborn, one of the defendants to the present bill, a master and special commissioner to make the sale.

The bill of complaint in the present case further alleges that, since the rendition of the decree in the former case, appellee has married and bought said land from his brother, and received a deed from him to the land in controversy; that he has moved on said land with his wife, and at the time of the filing of this bill, he is occupying the land in good faith as a homestead. The present bill prays that the lien fixed on said land by the former decree be canceled as a cloud upon his title, and that the commissioner be enjoined from selling said land under the authority of the decree. Barnes & Co., appellants here, demurred to the bill, and for causes of demurrer assigns the following:

"First. That said bill of complaint shows on its face that the defendant, Barnes & Co., has a lien upon the land in the bill of complaint described, prior to and superior to any claim of the complainant that the same is a homestead, and that the defendant has a right to have L. C. Welborn proceed to enforce said lien in the manner in which he was proceeding as shown by the bill.

"Second. Said bill shows on its face that the complainant does not own the land described in the bill of complaint, or any interest therein entitling him to have the same protected as a homestead.

"Third. The bill shows upon its face facts relating to the conduct of defendant as to said land, which estopped him to claim said land as a homestead or to claim any interest therein.

"Fourth. For causes to be assigned at the hearing."

The court overruled the demurrer, and an appeal. was granted to settle the principles of the cause.

Taking the allegations of the bill of complaint as true, was the decree overruling the demurrer correct?

Stated differently, in the circumstances, has appellee here, complainant below, by his marriage after the decree canceling the deed to his brother, and fixing. a lien on the land in controversy in favor of his (appellee's) creditors to satisfy their claim, acquired a. homestead right in the land, which can be set up to defeat the lien acquired by the decree in the former case?

In *Trotter* v. *Dobbs,* 38 Miss. 198, it was held that. if a judgment debtor becomes a householder and the head of a family, after the rendition of the judgment and before the sale, he will be entitled to hold exempt from sale, under a levy made to enforce the judgment, the homestead thus acquired. In that case the judgment debtor was residing on the land before the judgment was rendered, and continued to do so to the day of sale. He was, however, a single man, until the very day of the sale. He married on the day of the sale, and before the sale was actually made. This court in that case said:

"It appears therefore that, whenever a party fills this description of character, he is entitled to the benefit of the privilege conferred, provided he occupies the position before the land has been sold under execution. For it is as necessary that he should hold the property for the support of himself and his family, where he becomes a householder and a head of a family after judgment rendered against him, as when he occupied that relation before the judgment; and the reason of the exemption applies as well in the one case as in the other."

In *Irwin* v. *Lewis,* 50 Miss. 363, this court said:

"Two things are necessary in order to consummate the right to the homestead: First, occupancy as a place of residence; second, by the head of a family and house-holder. If the debtor fulfills these conditions. then the premises, to the extent of quantity and value named in the statute is exempt from 'seizure' and 'sale.' . . . Although therefore the property might have been liable to levy and sale at the . . . rendition of judgment, yet, if before either a levy or sale, the property is impressed with the rights of a homestead, the creditor can proceed no further."

In that case, a bill was filed in the chancery court to enjoin the sale under execution, and it was insisted that the court of chancery had no jurisdiction to enjoin the sale; the remedy being adequate at law. The court held that the chancery court did have jurisdiction.

The last-named case, so far as it has application to the present case, held that although the person claiming the exemption was not the head of a family at the time the debts were contracted and at the date the judgments were rendered, and for some time there-after, he could nevertheless claim the exemptions if he was married, the head of a family, and occupied the premises before the sale under legal process.

In *Letchford* v. *Cary*, 52 Miss. 791, this court stated the point involved thus:

"Mrs. Cary bases her right to the homestead on the ground that she actually resided upon the land before the sale, and since, but her possession did not begin until after the recovery of the judgments under which the sheriff sold and Letchford became the purchaser. Letchford claims, on the other hand, that the judgments under which he purchased were liens upon the land before Mrs. Cary took up her residence upon them, and that her occupation cannot divest the lien."

Citing *Trotter* v. *Dobbs*, 38 Miss. 198, the court con-firmed Mrs. Cary's right to the exemption.

Thus far the decisions of our court were based upon .claims of the homestead right as against judgment and execution liens. In the present case, a specific lien to pay a specific indebtedness was fixed upon the land, and a commissioner to sell the land was appointed by the ·court for the express purpose of liquidating the ·indebtedness of appellants.

In *Woods* v. *Bowles,* 92 Miss. 848, 46 So. 414, 131 Am. St. Rep. 559, considering the precise point here, the court approved *Dulion* v. *Harkness,* 80 Miss. 9, .31 So. 416, 92 Am. St. Rep. 563, wherein it was held that there was no difference between judgments at law and decrees in equity as to this right, and used this ˉlanguage:

"In the case now before the court the contention is ·that, because the claims forming the foundation of the decree were for rents and profits due the appellants .and arising out of the common estate owned by them ˉbefore partition, and because the court in making the decree for partition in kind adjudged certain amounts to be due appellants as rents and profits owing them by appellee, and made the sum so adjudged a charge upon the separate interest of 'appellee after partition, a different rule is to be applied. We cannot assent to this. The decree is subject to be defeated ·in its execution by the same things which would defeat any other decree or judgment."

*Dulion* v. *Harkness, supra,* seems to be peculiarly .applicable to the instant case. In that case this court ·quotes with approval the following language taken from the opinion of the court in *Kuevan* v. *Specker,* 11 Bush (Ky.) 3, viz.:

"These appellees are asking now to subject the prop- ·erty to the payment of their debts, upon the ground that the conveyance to the son was fraudulent and void as to creditors; and, if made liable by the chancellor, it ·must be for the reason that it is still the property of ʹTheodore Kuevan, the debtor. If his property, himself

and wife being still in possession, the creditors will not be allowed to say that he can subject it to satisfy our demands because he is still the owner, and at the same time deny his right to a homestead for the reason that he is not the owner. If the property is made liable for Theodore Kuevan's debts for the reason that the conveyance is fraudulent and void, it must be sold subject to the exemptions made by law for the benefit of the debtor. . . . . A fraudulent conveyance does not enlarge the rights of creditors, but only leaves them to enforce such rights as if no conveyance had been made."

*Meyer Bros.* v. *Fly,* 63 So. 227, is not applicable to the facts of this case. That case went off on the citizenship and residence of the claimant to the homestead right.

We have reviewed the leading cases decided by this court which are pertinent to the issues presented in the present case. There was at one time some disposition to question the reasoning of the court in *Trotter* v. *Dobbs, supra;* but it is certain now that the rule announced in that case is the finally settled law of this state. It is also finally settled that specific liens fixed by the decrees of courts of equity have no greater force upon homestead rights than judgments pronounced by and executions issuing from law courts.

*Woods* v. *Bowles, supra,* and *Dulion* v. *Harkness, supra,* are on all fours with the present case.

If the claimant is otherwise within the statute, and is in the occupancy of the homestead before it is sold under execution or decree, his claim is complete. It is the policy of the law to encourage the acquirement of homes, and creditor's rights to collect their dues from their debtors is subordinate to the rights of the family. In all contracts made in this state, is written the exemption statute, and no creditor has a right to complain.

*Affirmed.*