Argued June 19, affirmed September 9, 1919.

# PAULSON *v.* HURLBURT, SHERIFF.

(183 Pac. 937.)

**Homestead—When Owner of Homestead Erecting House Thereon and Entering It can Claim Exemption.**

1. Under Section 221, L. O. L., declaring family homestead exempt from judicial sale for satisfaction of any judgment, and requiring only that it must be the actual abode of, and owned by, such family, or a member thereof, and Section 224, providing that when an officer shall levy on it the owner may notify him that he claims it as his homestead, the owner of land, a member of a family, contracting for erection of a house thereon, while living with her family on rented premises, but moving into the house before foreclosure of liens for labor and material entering into it, may claim exemption against execution on foreclosure decree, having done nothing to lose or waive homestead right.

[As to common-law rule for exemption of proceeds of homestead, see note in 45 Am. St. Rep. 237.]

**Homestead—Right to Claim Against Deed in Fact a Mortgage.**

2. One's right to claim homestead exemption is not affected by her executing an instrument on its face an absolute conveyance of the property; it being accompanied by a defeasance in writing showing it was a security as to certain claims, and so constituted a mortgage, not divesting title from grantor.

**Homestead—Exemption Statute Applying to Decrees not Affected by Codification.**

3. The homestead exemption statute does not lose its natural effect, standing by itself, as a remedial statute, of applying to decrees, though in terms exempting from judicial sale for satisfaction of any judgment, because put in Sections 221–226, L. O. L., while Section 415 provides that Sections 213–220, which apply to the constituent elements of executions, and Sections 227–258, which cover exemptions as they were codified before enactment of the homestead statute, shall apply to enforcement of a decree, so far as its nature may require or admit of it.

**Homestead—Exemption Statute Becomes Part of Contract for Building Dwelling.**

4. The homestead exemption statute, Sections 221–226, L. O. L., existing when contract for erection of a dwelling is made, enters into it, and so makes it part of the contract that exemption may be claimed against execution on decree foreclosing lien for labor and material entering into the building.

JOHNS, J., dissenting.

From Multnomah: ROBERT TUCKER, Judge.

Department 2.

The defendant Hurlburt is sheriff of Multnomah County. The plaintiff is the owner of a lot in Irvington and the dwelling constructed thereon and resides there with her family, their actual physical occupation of the premises as their home having commenced on Thanksgiving Day of 1914. She was the owner and holder of the legal title of the property at the time the construction of the residence mentioned began, and continued as such owner except as the title thereto is affected, by a conveyance to W. J. Clemens on December 30, 1914, which was accompanied by a defeasance in writing of that date, conditioned in substance that Clemens would reconvey the property on payment of all charges against the property with certain exceptions, the payment to be made within one year. The construction of the dwelling began prior to August 24, 1914, there being no building on the property before that time. The plaintiff and her family were living then on other property not owned by her. The dwelling mentioned was completed in the latter part of December, 1914. Suit to foreclose certain mechanics' liens upon it was commenced January 25, 1915, ending in a decree of foreclosure directing the property in dispute to be sold for the satisfaction of the liens. Execution was issued after the case had been appealed to this court and returned to the Circuit Court modified, and the sheriff was proceeding to advertise the property for sale when on July 14, 1917, he was notified in writing by the plaintiff here that she claimed the property to be exempt from execution as her homestead. As the defendant failed to desist in his purpose to sell the property this suit was instituted to enjoin the sale so long as the plaintiff continues to occupy it as her

homestead.   In the stipulation of facts from which the foregoing statement is condensed, it is agreed that the plaintiff did not interpose her homestead right as a defense in the suit to foreclose the liens; further, that if she were allowed to testify on the subject she would state that when she commenced the building of the residence on the property she intended to make it her home as soon as she could occupy it and that the intention had never been abandoned.   The Circuit Court adopted the stipulation as findings of fact and as a conclusion of law upheld the plaintiff's claim of homestead and enjoined the sale.   The defendant appeals.

AFFIRMED.

For appellant there was a brief over the names of *Messrs. Lewis, Lewis & Finnigan, Mr. W. S. Asher, Messrs. Angell & Fisher* and *Messrs. Hall & Lepper,* with an oral argument by *Mr. Arthur H. Lewis.*

For respondent there was a brief and an oral argument by *Mr. L. P. Hewitt.*

BURNETT, J.—1. The question to be determined is whether or not the owner of realty, being a member of family living in a dwelling erected on the land, can claim homestead as against an execution issued on a decree foreclosing liens for labor and material furnished in the erection of the house into which the owner moved and took up her residence with her family prior to foreclosure.   It is not necessary to decide what would result if she had not occupied the dwelling until after issuance of execution, for that is not the aspect of this case.

There are two lines of authority.   Those precedents relied upon by the defendant are to the effect that the

lien binds the property as against the homestead exemption from the date of furnishing the labor or material, so that although at that time the would-be homesteader owned the property and intended to occupy it with his family as a home as soon as he could do so, yet all this would not prevent its sequestration by execution issued on a decree of foreclosure subsequently obtained. The other decisions, on the contrary, are to the effect that homestead is a privilege to be exercised by the owner of the property only when an attempt is made to sell it, and if at that time he comes within the purview of the homestead statute, he can successfully claim the benefit of the homestead privilege. All the cases are affected in different ways by the particular terms of the statute under which they are decided, but in the main the enactments are very much alike. Our own statute does not require any previous notice of the claim of homestead. It is said in Section 221, L. O. L.:

"The homestead of any family shall be exempt from judicial sale for the satisfaction of any judgment hereafter obtained. Such homestead must be the actual abode of, and owned by such family or some member thereof."

It is provided in Section 224, L. O. L., that when any officer shall levy upon such homestead, the owner thereof, wife, husband, agent or attorney of such owner, may notify such officer that he claims such premises as his homestead, describing the same by metes and bounds, lot or block, or legal subdivision of the United States. Then follows other procedure in relation thereto not necessary to be considered here. Some statutes prescribe a notice or notation on the record or some such thing to establish a homestead. The law in this state on that subject requires no previ-

ous action of that sort. The privilege here depends upon the fact whether the claimant comes within the intent of the statute. It is not necessary to have any precedent record or memorial of that fact, or to follow any particular form in asserting the claim to an officer holding an execution.

Some of the defendant's citations are here noted. In *Hansen* v. *Jones,* 57 Or. 416 (109 Pac. 868), the plaintiff had acquired property through her former husband's estate. A judgment was docketed against her October 14, 1907. She sold the property November 27th following. The execution was levied December 31st. The land was reconveyed to her on the tenth of the following month and three days after again acquiring the title she interposed for the first time a claim of homestead against the pending sale. Mr. Justice SLATER, discussing the situation, said:

"In this case plaintiff was not the owner of the premises at the time the execution was levied, and therefore she could not then, or thereafter, assert the right of a homestead subsequently acquired as superior to the lien of the judgment."

This language indicates that the matter is controlled by the conditions existing at the time the levy of execution is made. In *Northwestern Thresher Co.* v. *McCarrol,* 30 Okl. 25 (118 Pac. 352, Ann. Cas. 1913B, 1147), the circumstances were that when the judgment was rendered the defendant was living on a United States homestead not the realty in dispute. Before the execution was levied he returned to the property in suit, which had been his former abode, and then claimed it as his exempt homestead. The court said that—

"It seems well settled by the authorities that when a judgment lien has attached, it cannot be divested by

the subsequent occupation of the land for homestead purposes.''

In *Upman* v. *Second Ward Bank,* 15 Wis. 449, the judgment had been rendered and became a final lien upon the land before the debtor came to the state, after which he went upon the land and claimed it as his homestead.   The court said:

''For if the judgment debtor could defeat the creditor under such circumstances and destroy his right to sell the property, we 'are unable to see why a party might not, upon the same principle, buy real estate subject to sale under prior existing liens and then utterly defeat those liens by claiming the property for a homestead.''

*Bunn* v. *Lindsay,* 95 Mo. 250 (7 S. W. 473, 6 Am. St. Rep. 48), was a case where the defendant had moved off the land and it was said in the syllabus:

''When a judgment lien has attached to land, it cannot be defeated or displaced by subsequent occupation as a homestead.''

Many of these cases and numerous others cited by the defendant depend upon the circumstances that when the lien and the decree enforcing it attached to the property the homestead claimant was a stranger to the title.   Many others rest upon the fact that whereas he once had homestead in the premises he had abandoned it.

2. In the instant case we may dismiss the arrangement with Clemens, for it appears that the instrument ostensibly passing the title, although on its face an absolute conveyance, was accompanied by a defeasance in writing showing that it was a security as against certain claims.   This clearly constitutes a mortgage and did not divest the title from the grantor.

3. The defendant cites Section 415, L. O. L., reading thus:

"The provisions of Section 213 to Section 220 inclusive and Section 227 to Section 258 inclusive, of this Code, shall apply to the enforcement of a decree so far as the nature of the decree may require or admit of it; but the mode of trial of an issue of fact in a proceeding against a garnishee shall be according to the mode of trial of such issue in a suit."

The part of the Code included in Sections 213 to 220 relates to the constituent elements of executions against property, against the person and for the delivery of the possession of real or personal property, to what counties the writ may issue, when it is returnable, and the like. Sections 227 to 258 cover exemptions as they were codified before the homestead statute was enacted, the procedure to determine by a sheriff's jury any adverse claim to property seized by him on execution, manner of levy and sale, confirmation, redemption and proceedings after execution. The defendant argues that because the homestead sections are not mentioned in the category embodied in Section 415 they do not apply to decrees in equity. This point was ruled against his contention by this court in *Davis v. Low,* 66 Or. 599 (135 Pac. 314), holding that the homestead is not subject to a mechanic's lien unless the exemption is waived or abandoned. Lord's Oregon Laws, so called, constitute only a compilation authorized by the act of March 17, 1909, Laws 1909, page 517, as amended in unimportant particulars by the act of February 23, 1911, Laws 1911, Chapter 213. By this legislation the codifier was directed "to compile, annotate and superintend the publication of the Codes and statutes of Oregon." When he assumed the performance of this task he found the former Code making

certain sections treating of executions applicable to the enforcement of decrees. He also found the homestead exemption statute passed after the compilation upon which the former Code was based. In rearranging all the legislation which had accumulated, the learned compiler put the homestead statute in a chapter with other exemptions, which was an appropriate classification.

But the compiler was not a lawmaker. Neither is codification legislation. The homestead statute neither gains nor loses force by the place it occupies in the collection of laws. Its sanction depends upon its own terms and would be the same if it had been printed anywhere else in the Code. To withhold decrees from its operation would be to construe a remedial statute with unwarranted strictness and to put into it exceptions not within the legislative intent.

4. The defendant also cites a wealth of authority for the proposition advanced in his brief that—

"Mechanics' liens, once acquired under an existing law, are regarded as a vested right which may not be impaired by any subsequent legislation."

This is true as a major premise, but it is not supported by the minor premise that the homestead statute was enacted in this instance after the liens involved had become vested rights. It was passed by the legislative assembly of 1893, long before any of the occurrences described in the case under consideration. Both the lien law and the homestead statute were in force when the contract was made for which the liens are claimed as security and the agreement is controlled by them. The defendant also argues that—

"The judgment does not give birth to the lien but only provides the means to enforce it."

This may be conceded but after all the very means to enforce the decree, viz., the execution, is what is hampered and held in abeyance by the homestead privilege. Here at the outset the plaintiff had the basic element of homestead, viz., ownership of the property. She had her family. She took no backward or divergent step but persevered in her project of creating a homestead. In this respect the case is unlike any that have been cited by the defendant.

Turning to other precedents, we find in *Walter* v. *Dobbs,* 38 Miss. 198, that the judgment debtor owned land and was a single man up to the day advertised for the execution sale. On that very day he married a wife but before the sale took place, occupied the premises with his spouse and successfully claimed homestead in the land. In *McMillan* v. *Mau,* 1 Wash. 29 (23 Pac. 441), the judgment debtor and his family moved on the land after the judgment lien attached and homestead was successfully claimed by his widow after his death, despite the judgment. It was said in *Woodward* v. *People's National Bank,* 2 Colo. App. 369 (31 Pac. 184):

"The statute gives to a judgment creditor a general lien upon all the real estate owned or afterwards acquired; but this general lien must yield to the special law."

The statute of Colorado under consideration required the claimant to cause the word "homestead" to be entered on the record of his title. After the debtor had done this, execution was issued on a judgment rendered before the entry of the word. Commenting upon this situation, the court further said:

"The general judgment lien attaches until the legal designation of the land as a homestead; such designation withdraws it from the operation of the general

lien that attaches to all the land owned. * * The property in question not having been subjected specifically to the judgment lien by the levy of an execution before it was withdrawn as a homestead, it was exempted from the levy of the execution."

In *Dulion* v. *Harkness,* 80 Miss. 8 (31 South. 416, 92 Am. St. Rep. 563), a debtor made a voluntary conveyance of the property to his wife which was set aside as having been made to defraud his judgment creditors after which he was allowed to claim it as a homestead. The principle upon which this case was decided was in effect that if the conveyance was made with the intent to defraud creditors it was utterly void and the situation was the same as if it had never been made, with the result that notwithstanding the previous judgments the execution debtor was in a situation to claim homestead when the writ was issued.

In *Barnes* v. *Buchanan,* 108 Miss. 822 (67 South. 462), the defendant, while a single man, sold his land to his brother. His creditor, Barnes, obtained a decree subjecting the land to payment of his claim after setting aside the deed as fraudulent but before sale could be made under the decree, Buchanan, the defendant, married, bought the land back from his brother, moved upon it with his wife and maintained it as his homestead as against the decree. The court held that specific liens fixed by equity decrees have no greater force against homesteads than law judgments.

In *Stone* v. *Darnell,* 20 Tex. 11, after judgment and levy of execution the judgment debtor completed a house on the land and moved into it with his family. He defended an ejectment action brought by the purchaser at the execution sale on the ground that the land was his homestead at the date of sale. The court said:

"The right to the homestead is placed by the Constitution above any claims or liens for the satisfaction of debts. * * The very object of the provision was to secure an asylum for the family whether the head of the family did or did not owe debts or whether the debts were or were not in judgments. * * The time of the sale is the time to which we must look in ascertaining the fact whether he did or did not have a homestead."

*Hawthorne* v. *Smith,* 3 Nev. 182, 189 (93 Am. Dec. 397), construes thus a statute similar to our own:

"As the law is totally silent as to the time when a selection shall be made of the homestead, declares no penalty for failing to select, makes no reservation in favor of liens acquired before selection, but simply says that when selected it shall be exempt from forced sale, we are forced to the conclusion that, after the selection is made and filed for record, no levy upon or sale of the homestead property can be legally made except for those classes of debts mentioned in the Constitution."

Another case depending upon the Nevada law was *Nevada Bank* v. *Treadway,* 8 Sawy. 456 (17 Fed. 887). In that instance five days before execution sale on a judgment against him, a single man married and with his wife filed a declaration of homestead, claiming the land upon which he had resided and continued to reside. He was sustained in his defense against an action of ejectment brought by the purchaser.

In *Cameron* v. *Gebhard,* 85 Tex. 610 (22 S. W. 1033, 34 Am. St. Rep. 832), the court said, in substance, if a homestead cannot be acquired until it is occupied, then no one can acquire a homestead exempted from forced sale unless he buys an improved place; and then he must have a race with the sheriff for possession.

In *Kenyon* v. *Erskine,* 69 Wash. 110 (124 Pac. 392), Erskine obtained a judgment against Kenyon and his wife and filed a transcript thereof with the county clerk making it a lien upon realty occupied by the defendants. Afterwards they filed their declaration of homestead and the court held that this superseded the lien of the judgment and made it nonenforceable. Another Washington case is *Snelling* v. *Butler,* 66 Wash. 165 (119 Pac. 3). In that instance after judgment in an action at law against them, the defendants filed their declaration of homestead on property they occupied then and when the judgment was rendered. The court enjoined sale on execution subsequently issued, saying:

"The judgment became a lien upon the property, subject to the right of the owners to defeat an execution sale by the filing of a homestead declaration. They filed the declaration before the issuance of the execution. When the declaration was filed, the property became a homestead and as such it was exempt from execution or forced sale."

In *Chafee* v. *Rainey,* 21 S. C. 11, when the judgment was rendered Rainey was a married man living with his second wife on the lot in question, it being his homestead. The wife died and he remained single, living alone about a year, when he married again and continued to live on the property with the third wife. The levy of execution was made after the third marriage. The court said:

"The right of homestead guaranteed by the Constitution is not an estate, but a mere right of exemption. It is nothing more than a prohibition against the use of the process of the courts for the collection of debts in certain cases and when a certain condition of things is found to exist. Whether the homestead provision in the Constitution divests the lien of a judgment is not in our judgment a question pertinent to the present

inquiry. It unquestionably forbids the enforcement of a judgment except in the excepted cases provided for in the Constitution, by levy and sale of the homestead of one who is the head of a family. When he became the head of a family is not the question. The real question is, Does the condition of things exist under which the Constitution forbids the use of the process of the courts in enforcing the collection of debts? If they do exist, then we are at a loss to perceive by what authority any officer or any court can refuse obedience to this plain mandate of the Constitution.''

The question between a mechanic's lien and the right to claim homestead is not altogether one of priorities. If it were, no one could claim the exemption at all, because the very judgment forming the basis of the execution he seeks to resist is prior to his claim. The two are not to be contrasted in the strict sense of priorities, for the judgment lien is a *quasi* estate in land or at least fetters the title, while the right of homestead is a mere personal privilege. It is true that when filed, the mechanic's lien notice relates back to the time when the work began or the materials were furnished, but that does not give the demand any greater force than if the notice had been filed at the time to which it relates. In all their efforts and litigation here in question the lien claimants were seeking to collect a debt arising from contract. To be enforceable at all it was essential that their claims of liens must be founded on a contract made directly with the owner of the property or through a contractor whom the statute granting the lien makes the agent of the owner for that purpose: *Smith* v. *Wilcox,* 44 Or. 323 (74 Pac. 708, 75 Pac. 710); *Litherland* v. *Cohn Real Estate Co.,* 54 Or. 71 (100 Pac. 1, 102 Pac. 303); *Equitable Savings & Loan Assn.* v. *Hewitt,* 55 Or. 329 (106 Pac. 447); *Stuart* v.

*Camp Carson Mining Co.,* 84 Or. 702 (165 Pac. 359). When the claimants of liens made their contract, with whomsoever-made, they did so with reference to the existing law relating to the subject matter of their agreements. That law entered into and was a constituent element of their stipulation as much as if actually written into the contracts themselves. By that law they were notified in advance that although, by proper steps pursued in regular and timely order, they might eventually obtain a decree giving them special advantage in collection of their demands, yet under certain conditions at the very end of their course, the other party could interpose the claim of homestead, staying the execution by which they would collect their claims and reduce them to possession.

Before they took their decree the plaintiff here owned the property and was in actual possession using it as the abode of herself and family. Both the elements of homestead were present, namely, actual abode of a family and ownership by a member of that family. The decree was made when those conditions were existent and operant. The plaintiff had no call to assert her right of homestead until the attempt was made to enforce the decree by execution. Counting the statute as an element of the agreement, as we must, it was part of the contract that she might claim homestead at any time prior to execution sale. There is no indication in the record that she ever waived, released or abandoned this provision of the contract which the lien claimants are trying to enforce.

It is urged that these claims are for the very labor and material which created the dwelling the plaintiff claims is exempt and that the allowance of her claim would work a fraud upon the people who furnished the labor and material, by depriving them of just compen-

sation. The argument is persuasive, but not conclu-
sive. It is not fraudulent, because it was a known ele-
ment of the contract, a provision of the law under
which the agreement was made. The lienors ought
not to have made such a contract unless they were will-
ing to be bound by it. They had no business to con-
tract with people who might become entitled to assert
homestead. The legislature has given to laborers and
materialmen an exceptionally favorable method of
securing and collecting their demands. The same
power affords to families an advantageous method of
protecting their homes from the extreme pressure of
debt. The law-making power provided an extraordi-
nary remedy but also devised a means of arresting
its enjoyment. There is nothing harsh in the home-
stead law that with equal plausibility may not be urged
against any exemption law. The family is the basis of
the social fabric, the cornerstone of society. While
the laborer is justly the object of legislative protec-
tion, the family, whether that of the laborer or another,
is equally if not more deserving of its beneficence. It
is a far cry from the olden time when there was im-
prisonment for debt and the father might be confined
in jail while his family starved because he could not
pay. The world has moved since then, and the law,
deeming the family of more importance than its debts,
has provided for it the homestead as a citadel in which
it is safe as against them for at least a shelter. This
was the law under which the lien claimants operated
and they cannot complain if the courts give effect to
its provisions as it then stood, although it has been
amended since then to except from the homestead law
mechanics' liens as well as mortgages: Laws 1919,
Chap. 112. The doctrine is thus stated in *Scofield* v.

93 Or.—28

*Hopkins,* 61 Wis. 370 (21 N. W. 259), Mr. Justice CASSÔDAY delivering judgment:

"The policy of the law is to secure to the debtor and his family a homestead which shall be beyond the reach of his creditors, however numerous. The statute seems to have been made for those who get in debt, and not for those who always pay their debts. Such need no exemption law, for they are a law unto themselves to that extent. This policy of the statute would certainly be frustrated if none are entitled to the exemption except those who have been so fortunate as to obtain a homestead prior to becoming judgment debtors. The spirit, if not the letter, of the law gives the right of acquisition, as well as protection after acquisition. There can be no such exemption without ownership. If it is also true that there can be no exemption until there is a dwelling-house upon the premises, actually occupied by the debtor personally, then it would be almost impossible for a homeless debtor, with judgments docketed against him, to get the benefit of the law; for the very instant he acquired the title, the judgment lien would attach. Under such a construction, the only possible way of securing such benefit would be to select premises with a dwelling already thereon, and then actually occupy, with the family, prior to the acquisition. But such strict literalism would do violence to the obvious intent of the legislature, and the whole current of authority in this state upon this subject. It was among the purposes of the statute to enable anyone without a home of his own to acquire one, even though judgments may be docketed against him when he embarks in the enterprise. The acquisition of a completed homestead is seldom instantaneous. Generally, it requires years of industry and economic living. The purpose necessarily precedes the inception of the work, and that is followed by successive steps, until completion is attained. The land must be acquired, the location of the dwelling-house designated, the cellar dug, the materials procured, the foundations laid, the superstructure erected,

and then all fitted for a dwelling-house, before actual occupancy with the family can take place. These successive steps in the acquisition of a completed homestead, made in good faith, come within the spirit of the statute, and are each entitled to the protection afforded by it.''

The case before us is not to be confounded with one where the homesteader buys for his home a tract upon which there is already a lien of any kind. In such an instance there is no privity of contract between him and the lienor so necessary to support a mechanic's lien, and he takes the estate *cum onere.* The philosophy of the cases relied upon by the defendant and which hold that after judgment it is too late to occupy the land and then for the first time claim homestead seems to be that the claimant has in such an instance chosen for his homestead a property having an inherent defect in the title; that he takes the estate with its existing infirmities and that he cannot complain if it fails him because of them. By analogy, this theory has countenance in *Hansen v. Jones,* 57 Or. 416 (109 Pac. 868). There, after judgment and before execution, the judgment debtor sold the land, thus destroying one of the essential statutory elements of homestead, that of ownership. This let in the judgment as a final adjustment of the relations of the parties to the land and when the judgment debtor repurchased it she took an estate less by the effect of the judgment than she had before. On principle, the soundest legal deduction is that as between the parties directly involved in mechanics' and materialmen's liens, the homestead privilege, available as it is, only when and not until execution issues, attends the contract and affects it from its inception through all its stages in whatever

form it assumes, to and including its ultimate form of a decree of foreclosure.

On the other hand, for the reason that the right to claim homestead is a nonassignable personal privilege and that there is no privity of contract to support his homestead in the land beyond the part remaining after the lien is carved out of it, no stranger can buy the property after the lien attaches and exclude it from its effect on the estate. In the instant case when the contractual relations in question began they at once assumed a process of development. The lienors commenced with an essential element of furnishing labor or material. On their side their status and the contract progressed from thence through all the stages of filing a notice of claim of lien, suit to foreclose and decree, the final step being execution and sale, by which alone the contract was to be consummated and the chose in action reduced to possession.

Furnishing material does not *ipso facto* give a right to sell the realty, neither does filing notice of lien. These are but steps in an extraordinary remedy for the collection of a debt. Also, a suit is necessary and there must be a decree and execution before the lien claimant can enjoy the fruits of his process. Running with them as a factor always to be reckoned with, is the element of homestead which persists and is potent if urged at any time prior to the execution sale, as taught in *Wilson* v. *Peterson,* 68 Or. 525 (136 Pac. 1187). In the development of the contractual relations involved the plaintiff here started with the equally indispensable elements of family and ownership of the property and coeval with or prior to the decree, attained the remainder of the necessary characteristics of homestead right, namely, actual occupancy of the premises as a home for herself and family.

As much as any other ingredient of the contractual connection between the parties, the right of the plaintiff to claim homestead, grounded as it was at the outset on her ownership in the property, affected that connection and kept pace in development with the evolution of the claims of the lienors. She did not abandon the basic characteristic of her privilege, that of ownership, by selling the realty as in *Hansen* v. *Jones,* 57 Or. 416 (109 Pac. 868). On the contrary, she continued on her course in preparing her homestead as sanctioned under similar statutes by the precedents in Arkansas, Texas, Nevada, Nebraska, Michigan, Oklahoma and South Dakota, here noted: *Stone* v. *Darnell,* 20 Tex. 11, followed by *Macmanus* v. *Campbell,* 37 Tex. 267; *Miller* v. *Flattery* (Tex. Civ. App.), 171 S. W. 253), stating that "when a homestead dedication has not been effected by actual occupancy, such effect must nevertheless be accorded to ownership, intention and visible acts of preparation to use it for a home"; *Nevada Bank* v. *Treadway,* 8 Sawy. 456 (17 Fed. 887); *Reske* v. *Reske,* 51 Mich. 541 (16 N. W. 895, 47 Am. Rep. 594), where in an opinion by Mr. Justice COOLEY the homestead of a young married couple was protected against an execution sale without their actually sleeping or eating on it or completing their dwelling-house, although they had built a stable and outbuildings, kept their stock there and occupied it as a woodyard, it having been their intention as manifested by their acts, to make it their homestead: *Mills* v. *Hobbs,* 76 Mich. 122 (42 N. W. 1084); *Myers* v. *Weaver,* 101 Mich. 477 (59 N. W. 810); *Corey* v. *Waldo,* 126 Mich. 706 (86 N. W. 122).

In *Gregory* v. *Pritchard,* 240 Fed. 414 (153 C. C. A. 246), involving consideration of the Oklahoma statute, a married man having no other realty bought for his

homestead a house and lot, then under lease for one year, on the information that the tenant would surrender the lease. After he purchased, he used every effort to get possession, but without avail, as the lessee refused to vacate. During the remainder of the term, the purchaser painted the house and made some repairs. The court protected him in his claim of homestead as against his trustee in bankruptcy. See, also, *McFarland* v. *Coyle* (Okl.), (172 Pac. 67), where similar conditions availed the homestead claimant against an execution sale; also *Illinois Life Ins. Co.* v. *Rogers* (Okl), (160 Pac. 56). *Kingman* v. *O'Callaghan,* 4 S. D. 628 (57 N. W. 912), teaches that a homestead in realty may be claimed by one who has bought it for that purpose, begins the erection of a house and moves into it as soon as the nature of the case admits. *Gill* v. *Gill,* 69 Ark. 596 (65 S. W. 112, 86 Am. St. Rep. 213, 55 L. R. A. 191), holds that the object of occupancy is to give notice of the claim of homestead; that mere intent alone is not sufficient but that when coupled with actual preparation to enter, such as repairing, cleaning, installing furniture and the like, occupancy is constructively established. *Hanlon* v. *Pollard,* 17 Neb. 368 (22 N. W. 767), was a case where a woman having a family bought land then in possession of a tenant. Her purpose was to occupy it as a homestead on expiration of the lease. A judgment was rendered against her after she bought but before she occupied the land. However, on the strength of her proved intention, her claim of homestead was sustained. In *Fogg* v. *Fogg,* 40 N. H. 282 (77 Am. Dec. 715), the owner was moving into the premises and had part of his furniture in the house when an attachment was levied upon the realty. He finished moving next day and was sustained in his claim of homestead.

These precedents indicate the length to which many courts have gone in their liberal construction of this protective statute, saying, in effect, that the occupancy required may be proved by the circumstantial evidence of intent coupled with acts indicative of a purpose to establish a home on the property in question. In the present litigation it is not necessary to occupy the advanced position assumed by these decisions, for when the lienors arrived at the point where they could issue execution against which alone homestead may be urged, the plaintiff was there before them with her fully developed right of homestead to prevent their sale. The ultimate purpose of their procedure was to divest her of the title to her property. When they essay the final act of the process, that of sale under execution, they are halted by the privilege the law gives her of claiming homestead. She is then in the situation to exercise it. Then is the only time she can use it, and to deny it to her now is to graft upon the statute in favor of lienors an exception not found there and so frustrate the benignant purpose of the law.

The decree of the Circuit Court is affirmed.

AFFIRMED.

BEAN and BENNETT, JJ., concur.

JOHNS, J., dissents.